TAYLOR BUILDING CORPORATION OF AMERICA, Appellee,

v.

BENFIELD et al., Appellants.

[Cite as *Taylor Bldg. Corp. of Am. v. Benfield,* 168 Ohio App.3d 517, 2006-Ohio-4428.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2005–09–083.

Decided Aug. 28, 2006.

518

Santen & Hughes, J. Robert Linneman, and C. Gregory Schmidt, for appellee.

Nichols, Speidel & Nichols, and Donald W. White, for appellants.

BRESSLER, Judge.

{¶ 1} Defendants-appellants, Marvin and Mary Ruth Benfield, appeal from a decision of the Clermont County Court of Common Pleas, granting the motion of plaintiff-appellee, Taylor Building Corporation of America, to stay judicial proceedings pending mediation and/or arbitration.

{¶ 2} Appellee is a Kentucky corporation whose principal place of business is in Louisville, Kentucky. Appellee is engaged in the business of constructing residential houses. Appellants are a married couple who reside in Cincinnati, Ohio, and own real estate in Clermont County, Ohio.

{¶ 3} On July 3, 2002, appellee entered into an agreement with appellants, whereby appellee agreed to construct a residential home for appellants on their property in Clermont County for $89,977. After commencing work, appellee sent invoices to appellants requesting progress payments as called for under the terms of the parties' construction contract. Appellants, being dissatisfied with appellee's work, refused to pay the invoices.

{¶ 4} In July 2003, appellants sent appellee a "Stop Work" letter, and ordered appellee to leave the premises and not return. As of July 31, 2003, appellants allegedly owed appellee $18,145.40 for materials and labor that appellee had furnished with respect to the parties' construction contract. In September 2003, appellee filed a mechanic's lien against appellants' Clermont County property.

{¶ 5} On November 26, 2003, appellee filed a complaint in foreclosure against appellants in the Clermont County Court of Common Pleas, raising claims of breach of contract, unjust enrichment, and quantum meruit. Appellee's complaint also sought foreclosure on the mechanic's lien that it had filed against appellants' property.

{¶ 6} At the same time it filed its complaint in foreclosure, appellee moved to stay the proceedings pending mediation and/or arbitration. Appellee based its motion on the mediation and arbitration clauses in the parties' construction agreement that required any claims or disputes arising under the agreement to be submitted to mediation, and upon failure of mediation, then to binding arbitration.

{¶ 7} On December 23, 2003, appellants filed an answer to appellee's complaint, denying the material allegations directed against them. Appellants also brought a counterclaim, alleging, among other things, that appellee: (1) had engaged in acts and practices in violation of the Ohio Consumer Sales Practices Act, (2) had breached its contractual obligations under the parties' contract, and (3) had made fraudulent misrepresentations to appellants regarding their competency as home builders.

{¶ 8} On December 24, 2003, appellants moved to dismiss Taylor's motion to stay judicial proceedings pending mediation and/or arbitration. Appellants argued, among other things, that several provisions of the parties' construction contract, including its mediation and arbitration clause, were "unconscionable" and, therefore, unenforceable.

{¶ 9} The trial court held a hearing on appellee's motion to stay the judicial proceedings pending mediation and/or arbitration. The only evidence submitted in the case was an affidavit from one of the appellants, Mary Ruth Benfield. In her affidavit, Mary Ruth adopted the allegations in appellants' answer, affirmative defenses, counterclaim, and response to appellee's motion to stay the proceedings pending mediation and/or arbitration.

{¶ 10} On August 17, 2005, the trial court issued a decision and entry finding that a provision in the mediation and arbitration clauses requiring that the mediation and/or arbitration take place in Kentucky was "substantively unconscionable" because it violated R.C. 4113.62. As a result, the trial court ordered that the mediation and/or arbitration proceedings must take place in Clermont County, Ohio. The trial court found that the remaining terms of the mediation and arbitration clauses and the construction contract, itself, were not unconscionable or otherwise unenforceable. Consequently, the trial court granted appellee's motion to stay the proceedings pending mediation and/or arbitration.

{¶ 11} Appellants now appeal, raising the following assignment of error:

{¶ 12} "The trial court erred as a matter of law in finding that the arbitration clause is enforceable."

{¶ 13} Appellants argue that the trial court erred in finding the mediation/arbitration clauses in the parties' contract to be enforceable, because the

clauses are unconscionable as a matter of law. We agree with appellants' argument.

{¶ 14} Generally, appellate courts review a trial court's disposition of a motion to stay proceedings and compel arbitration under an abuse-of-discretion standard of review. See, e.g., *Yessenow v. Aue Design Studio, Inc.*, 165 Ohio App.3d 757, 2006-Ohio-1202, 848 N.E.2d 563, ¶ 11; *McGuffey v. LensCrafters, Inc.* (2001), 141 Ohio App.3d 44, 49, 749 N.E.2d 825.

{¶ 15} However, when an appellate court is presented with a purely legal question, the appropriate standard of appellate review is de novo. *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 11. Under a de novo standard of review, an appellate court does not defer to a trial court's decision. Id. On questions of law, a trial court does not exercise discretion, and the appellate court's review is plenary. Id. at ¶ 12, citing *McGee v. Ohio State Bd. of Psychology* (1993), 82 Ohio App.3d 301, 305, 611 N.E.2d 902.

{¶ 16} The determination whether a provision in a contract is unconscionable is a question of law. *Ins. Co. of N. Am. v. Automatic Sprinkler Corp.* (1981), 67 Ohio St.2d 91, 98, 21 O.O.3d 58, 423 N.E.2d 151. Therefore, in reviewing the trial court's ruling on the question of unconscionability, we apply a de novo, rather than an abuse-of-discretion, standard of review. See *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 13; *Dunkelman v. Cincinnati Bengals, Inc.*, 158 Ohio App.3d 604, 2004-Ohio-6425, 821 N.E.2d 198, ¶ 19–20; *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶ 8.

{¶ 17} In Ohio, "arbitration is encouraged as a method to settle disputes. A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." (Citation omitted.) *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859.

{¶ 18} An arbitration clause may be unenforceable "upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One such ground is "unconscionability." See *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 16; *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶ 6. "Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to

the other party." *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294.

{¶ 19} An arbitration clause is unconscionable when the clause is " 'so one-sided as to oppress or unfairly surprise [a] party.' " *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 311–312, 610 N.E.2d 1089, quoting Black's Law Dictionary (5th Ed.Rev.1979) 1367. "The party seeking to establish that an arbitration clause is unconscionable must show that the provision is both procedurally and substantively unconscionable." *Porpora,* 160 Ohio App.3d 843, 2005-Ohio-2410, at ¶ 6.

{¶ 20} Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible. Id. at ¶ 7. To determine whether a contract provision is procedurally unconscionable, courts consider the following factors: (1) the relative bargaining positions of the parties, (2) whether the terms of the provision were explained to the weaker party, and (3) whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed. Id.

{¶ 21} Additionally, when "there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature," there is "considerable doubt that any true agreement ever existed to submit disputes to arbitration." *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 473, 700 N.E.2d 859. Black's Law Dictionary (8th Ed.2004) 342, defines an adhesion contract as a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms."

{¶ 22} Substantive unconscionability refers to the actual terms of the agreement. *Porpora,* 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 8. Contract terms are substantively unconscionable if they are unfair and commercially unreasonable. *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.* (1996), 113 Ohio App.3d 75, 80, 680 N.E.2d 240. "Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular * * * clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Collins,* 86 Ohio App.3d at 834, 621 N.E.2d 1294.

{¶ 23} "In order to determine whether a given contract provision is unconscionable, courts must examine the particular facts and circumstances

surrounding the agreement." *Porpora,* 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 9. After a de novo review of the evidence in this case, we find abundant evidence in the record to show that the contractual provisions at issue in this case are both procedurally and substantively unconscionable.

{¶ 24} In its decision, the trial court found that there was no evidence that appellee presented the construction contract with the mediation/arbitration clauses to appellants on a "take it or leave it" basis. However, according to Mary Ruth Benfield's affidavit, she states that appellee's agent advised them that appellee "would not sign a contract without the arbitration/mediation clause[.]" The fact that appellee refused to negotiate this provision is a fact that weighs in favor of a finding of procedural unconscionability. See *Porpora* at ¶ 12.

{¶ 25} Furthermore, appellants were not represented by counsel. This is another factor that tends to demonstrate procedural unconscionability. See *Porpora* at ¶ 12; *Eagle,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 59. While the record indicates that appellants knew about the mediation and arbitration clauses, Mary Ruth Benfield's affidavit indicates that appellee's agent minimized the importance of the clause, stating that, while appellee would not enter into an agreement without the clause, the clause was "not necessary since [appellee] never had any disputes over the quality of their product and workmanship * * * [and appellee] did not see the arbitration/mediation [clauses] as being a factor since [appellee was] concerned about keeping [its] customers happy."

{¶ 26} In appellee's favor, we note that appellants were unable to demonstrate that they could not have their house constructed by a builder other than appellee. As the trial court noted, "[t]here are a multitude of homebuilders in the local area." Furthermore, the trial court was permitted to take judicial notice of this fact since it is a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonabl[y] be questioned." Evid.R. 201(B).

{¶ 27} The fact that there are many other homebuilders in the area shows that there were "alternative sources of supply" for the goods and services in question. Hence, this fact weighs against a finding of procedural unconscionability. See *Collins,* 86 Ohio App.3d at 834, 621 N.E.2d 1294. However, the weight of this fact is weakened by the representations made by appellee's sales representative in inducing appellants into entering into the agreement by minimizing the importance and effect of the mediation/arbitration clauses.

{¶ 28} Also, we note that the written agreement presented to appellants was a pre-printed form contract, prepared by appellee, with many clauses that were not subject to negotiation. Accordingly, we find that this contract is a clear example

of an adhesion contract. Balancing the factors described above, we find that the mediation/arbitration clauses are procedurally unconscionable.

{¶ 29} With respect to the issue of substantive unconscionability, the contract in question contains numerous clauses that are notably unfair, including the following:

{¶ 30} "6. (a) *That [appellants have] no right of possession of the real estate and improvements until full and final payment including any additional amounts due as a result of Change Orders has been paid to [appellee].* [Appellants] further [agree] that notwithstanding the provisions for liquidated damages, in the event of a breach of the conditions of this Paragraph 6 of the Agreement, [appellee] will not have adequate remedy at law, and accordingly to prevent [appellants], or its successors in interest from occupying or causing others to occupy the real estate improvements prior to said full and final payment, that [appellee] may have a temporary restraining order, temporary and perpetual injunction restraining and enjoying the occupancy until said final payment is made.

{¶ 31} "(b) [Appellants] further [agree] that in addition to the equitable remedies provided for in Subparagraph (a) above upon violation of the terms of this Paragraph 6, [appellee] shall be entitled to recover as liquidated damages and not as a penalty $950.00 for the initial moving in, occupancy, or storing of furniture in the housing unit, garage, or basement and $60.00 per housing unit for each day the violation continues.

{¶ 32} "7. To pay reasonable legal costs for the enforcement of [appellee's] rights under this contract, including attorney's fees, court costs, fees and expenses.

{¶ 33} "9. * * * In the event of default by [appellants] it is agreed that in addition to or in lieu of its remedies for breach of contract, [appellee] may enforce its lien as liens against real estate are enforced.

{¶ 34} "10. To pay $1,000.00 in addition to the amount shown on this contract if funding is provided by an institution using FHA, VA, FMHA, or STATE BONDED FUNDS or if any loan is insured by the parties referred to herein; or, if [appellants'] construction lender requires individual subcontractor affidavits/lien waivers.

{¶ 35} "12. * * * [Appellants] further [agree] that it has no right to interrupt construction for any reason whatsoever.

{¶ 36} "15. * * * (b) *Arbitration* —In the event the issues cannot be resolved by mediation, then any claims or disputes arising out of this Construction Agreement or the alleged breach thereunder shall be settled by **mandatory and**

**binding** arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless both parties mutually agree otherwise. (This position shall not affect [appellee's] right to secure a mechanic's lien and to pursue those remedies described in Sections 6 and 9 hereof.) Notices of the demand for arbitration shall be filed with a copy of this Construction Agreement with the American Arbitration Association and the other party to this Agreement. The site for the arbitration proceedings shall be Louisville, Kentucky (Jefferson County).

{¶ 37} "16. That in the event any of the provisions of this Agreement as to mediation, arbitration or [appellee] buy back, are deemed unenforceable, or in the event of an action initiated by [appellee] pursuant to Paragraph 6 and 9 of this Agreement, *both parties agree that any and all legal actions arising out of this Construction Agreement or the alleged breach thereunder shall be tried by a judge sitting without a jury and both parties do hereby Knowingly, Voluntarily and Intentionally waive any right to a jury trial. The site for the aforementioned action shall be* Louisville, Kentucky (Jefferson County). Nothing herein is intended or shall be construed to limit or prevent [appellee] from pursuing and performing any mechanic's lien upon the Real Estate and Improvements for sums unpaid under this Agreement. The provisions in this paragraph are a material inducement for [appellee] to enter into this Construction Agreement." (Emphasis sic.)

{¶ 38} The clauses referred to above are heavily skewed in favor of appellee, imposing significant restrictions on appellants alone. For example, according to the terms of this agreement, appellants are prohibited from interrupting construction under any circumstances and are prohibited from possession of their own property, even in the event of a breach on the part of appellee. These clauses force appellants to wait until completion of construction before seeking relief, preventing appellants from mitigating damages in the event of a breach of contract. See *Porpora*, 160 Ohio App.3d 843, 2005–Ohio–2410, 828 N.E.2d 1081, at ¶ 16. In fact, these clauses prevented appellants from being able to correct building code violations before the Clermont County Building Inspector ordered that all construction cease.

{¶ 39} Furthermore, by entering into this agreement, appellants are required not only to waive their right to a jury trial, but to assume complete responsibility for paying appellee's "reasonable legal costs for the enforcement" of appellee's rights under the construction contract, including appellee's "attorney's fees, court costs, fees and expenses." Appellees, on the other hand, are not burdened with a similar responsibility to pay all reasonable costs, including attorney's fees, for the enforcement of appellants' rights under the contract.

{¶ 40} We note that this agreement, including its mediation and arbitration clause, cannot be deemed unconscionable merely because both parties to the contract do not have to pay the other's attorney fees for the enforcement of their rights under the agreement. See *Robbins v. Country Club Retirement Ctr. IV, Inc.*, Belmont App. No. 04 BE 43, 2005-Ohio-1338, 2005 WL 678765, ¶ 25–26 (merely because an arbitration agreement can be read as being more favorable to one party does not invalidate the agreement as lacking mutuality of obligation, because the concept of mutuality of obligations in contract law does not mean that each party must have the exact same obligations). However, this provision is but one of multiple examples of the substantive unfairness of the terms in this contract.

{¶ 41} Moreover, the agreement does not disclose the costs of alternative dispute resolution, or the fact that those costs are often substantially higher than the costs associated with court proceedings. These clauses, which impose significant undisclosed costs on appellants, are comparable to those found substantively unconscionable in *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 37–51, and *Porpora*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 16.

{¶ 42} The provisions discussed above are troubling because they create a chilling effect and are most certainly appellee's attempt to avoid potential liability for a breach of contract, should one occur. In the event of such a breach, appellants are unable to stop construction until completion. Then, to bring a claim against appellee, appellants are required to pay for and submit to out-of-state alternative dispute resolution, and in the event that any litigation arises out of the agreement and/or alternative dispute resolution, appellants are subject to out-of-state litigation and are responsible for all court costs as well as both parties' legal fees. We find this to be substantively unconscionable.

{¶ 43} In addition, portions of the contract are in violation of R.C. 4113.62(D), which provides:

{¶ 44} "(1) Any provision of a construction contract, agreement, understanding, or specification or other document or documentation that is made a part of a construction contract, subcontract, agreement, or understanding for an improvement, or portion thereof, to real estate in this state that makes the construction contract or subcontract, agreement, or other understanding subject to the laws of another state is void and unenforceable as against public policy.

{¶ 45} "(2) Any provision of a construction contract, agreement, understanding, specification, or other document or documentation that is made a part of a construction contract, subcontract, agreement, or understanding for an improvement, or portion thereof, to real estate in this state that requires any litigation,

arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding to occur in another state is void and unenforceable as against public policy. Any litigation, arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding shall take place in the county or counties in which the improvement to real estate is located or at another location within this state mutually agreed upon by the parties."

{¶ 46} The trial court correctly found that the portion of the mediation/arbitration clauses requiring alternative dispute resolution to take place in Kentucky violates R.C. 4113.62. However, paragraph 16 of the agreement requires all litigation arising from the contract take place in Kentucky, which also violates R.C. 4113.62.

{¶ 47} The litigation clause in the agreement presents an additional problem. " 'For a dispute resolution procedure to be classified as "arbitration," the decision rendered must be final, binding and without any qualification or condition as to the finality of an award.' An arbitration award may be challenged only through the procedure set forth in R.C. 2711.13 and on the grounds enumerated in R.C. 2711.10 and 2711.11. 'The jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited.' " (Citations omitted.) *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, ¶ 10. "By permitting a trial de novo in some instances, [an arbitration] provision unnecessarily subjects the parties to multiple proceedings in a variety of forums, increases costs, extends the time consumed in ultimately resolving a dispute, and eviscerates any advantage of unburdening crowded court dockets." *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 716, 590 N.E.2d 1242. Accordingly, when an arbitration clause is not a provision providing for true arbitration, the entire arbitration clause is unenforceable. Id.

{¶ 48} As referred to in paragraph 16, the agreement provides for judicial review in the event that the mediation and/or arbitration clauses are declared unenforceable. Accordingly, the mediation/arbitration clauses at issue do not provide for a final and binding decision. This is an additional reason for finding the mediation/arbitration clauses to be unenforceable.

{¶ 49} While mutuality of obligation in contract law does not mean that each party must have identical obligations, there is ample evidence in the record and in the contract itself indicating that the parties' bargaining power in this case was so unfairly one-sided as to render the mediation/arbitration clauses unconscionable. In viewing the factors de novo to determine whether the clauses at issues are unconscionable, those factors weigh heavily in favor of finding these provisions to be procedurally and substantively unconscionable.

{¶ 50} The unconscionability of the mediation/arbitration clauses and other unduly oppressive clauses discussed above demonstrates the complete lack of meaningful choice and ability to negotiate on appellants' part in entering into this agreement. Such unfairness permeates this contract to the extent that we find it void and unenforceable in its entirety.[1] Accordingly, we sustain appellants' assignment of error.

{¶ 51} The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

POWELL, P.J., and WALSH, J., concur.

---

1. Since the issue of the enforceability of the entire contract was raised in the trial court and touched upon an appellant's brief, we find no application of the dicta in *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 522 N.E.2d 524.