WASCOVICH, Appellant,

v.

PERSONACARE OF OHIO, INC. et al., Appellees.

[Cite as *Wascovich v. Personacare of Ohio*, 190 Ohio App.3d 619, 2010-Ohio-4563.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2010–L–006.

Decided Sept. 24, 2010.

620

The Dickson Firm, L.L.C., and Blake A. Dickson, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., Paul W. McCartney and Vaseem S. Hadi, for appellees.

---

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellant, Richard J. Wascovich Jr., appeals the judgment of the Lake County Court of Common Pleas granting, in part, a motion to stay the proceedings pending arbitration filed by appellees, Personacare of Ohio, d.b.a. the LakeMed Nursing and Rehabilitation Center et al. ("Personacare"). Based on the following, the judgment of the Lake County Court of Common Pleas is hereby reversed, and the cause is remanded.

{¶ 2} On April 4, 2008, appellant's father, Richard J. Wascovich Sr. ("Wascovich"), 73, was admitted to LakeMed Nursing Home. According to the complaint, Wascovich fell at LakeMed on April 29, 2008. Wascovich fell again on May 5, 2008, suffering a fracture of his right hip, which had to be surgically repaired. Wascovich died as a result of complications with this hip fracture.

{¶ 3} Appellant, as the personal representative of Wascovich, filed a complaint against Personacare alleging that Personacare was responsible for his death.

{¶ 4} Personacare filed a motion to stay the proceedings, pursuant to R.C. 2711.02. Attached to Personacare's motion to stay was a copy of the arbitration agreement signed by Wascovich, upon his admittance, and by Jillian Hendrickson, Personacare's authorized agent. Appellant filed a brief in opposition to Personacare's motion to stay, claiming that the arbitration agreement did not control the wrongful-death portion of the complaint. In that same motion, appellant requested a briefing schedule relative to the arbitration clause and the remaining survival claim, alleging that the arbitration "clauses contained in the nursing home admission agreement can be held to be invalid if they are found to be both procedurally unconscionable and substantively unconscionable."

{¶ 5} In a judgment entry dated August 17, 2009, the trial court found that only the survival claims fell under the arbitration agreement. In doing so, the trial court relied upon the Supreme Court of Ohio's holding in *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258. Peters was an employee of the appellant and entered into a dispute-resolution plan. Thereafter, Peters fell 50 feet to his death; Peters's widow brought both a survival action and a wrongful-death action against the appellant. The question presented to the *Peters* court was "whether the personal representative of a decedent's estate is required to arbitrate a wrongful-death claim when the

decedent had agreed to arbitrate all claims against the alleged tortfeasor." Id. at ¶ 1.

{¶ 6} The *Peters* court held, "A survival action brought to recover for a decedent's own injuries before his or her death is independent from a wrongful-death action seeking damages for the injuries that the decedent's beneficiaries suffer as a result of the death, even though the same nominal party prosecutes both actions." Id. at paragraph one of the syllabus. The court further held, "A decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims." Id. at paragraph two of the syllabus. In *Peters,* the Supreme Court reiterated its position that arbitration has been "long favored" and encouraged as a "cost-effective proceeding that permits parties to achieve permanent resolution of their disputes in an expedient manner." Id. at ¶ 20. However, it warned that although arbitration is favored, it cannot be "imposed on the unwilling." Id.

{¶ 7} Although the decedent in *Peters* had entered into a dispute-resolution plan, there was no challenge to the enforceability of the plan; that is, whether the underlying agreement was unconscionable.

{¶ 8} In the instant matter, the trial court held the remainder of Personacare's motion to stay in abeyance, to wit, appellant's survival claim for damages, "until [appellant] has had the opportunity to fully brief the remaining issues."

{¶ 9} Discovery ensued. Personacare filed a response to appellant's complaint on October 27, 2009. Both parties filed responsive briefs.

{¶ 10} Appellant attached the following to his brief in opposition to Personacare's motion to stay: (1) a letter from the Ohio Department of Health regarding binding arbitration agreements in long-term care and residential care facilities, (2) his own affidavit, (3) an affidavit of Jillian Hendrickson, (4) the admission agreement, and (5) the Code of Procedure for the National Arbitration Forum.

{¶ 11} In its reply brief, Personacare attached the following items: (1) a copy of *Manley v. Personacare of Ohio,* 11th Dist. No. 2005–L–174, 2007-Ohio-343, 2007 WL 210583, (2) a copy of Patricia Manley's alternative-dispute-resolution agreement, (3) "supplemental disclosures for Kindred Mediations," and (4) an affidavit of Jillian Hendrickson.

{¶ 12} The trial court issued a December 14, 2009 judgment entry finding the arbitration agreement procedurally unconscionable. The trial court stated:

{¶ 13} "While [Personacare] argue[s] that the terms of the Agreement were explained to [Wascovich] and that [Wascovich] had the opportunity to ask questions or to alter the terms of the Agreement, the Court finds that these factors are outweighed by the ones supporting a finding of procedural unconscionability. The circumstances surrounding [Wascovich's] admission to Lak-

eMed led to an absence of meaningful choice on the part of [Wascovich]. As such, the Agreement was procedurally unconscionable."

{¶ 14} Addressing substantive unconscionability, the trial court found that it was "bound by the law in Ohio, as set forth in *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054 [908 N.E.2d 408]. Unless an arbitration clause is shown to be procedurally and substantively unconscionable, which [appellant] has failed to do here, the Agreement is enforceable." The trial court, therefore, stayed appellant's survival claims pending arbitration of the claim.

{¶ 15} Appellant filed a notice of appeal and asserts the following assignment of error:

{¶ 16} "The trial court erred when it granted defendant Personacare of Ohio, Inc. d.b.a. [LakeMed] Nursing and Rehabilitation Center and defendant [LakeMed] Nursing and Rehabilitation Center's motion to stay proceedings, pursuant to [R.C.] 2711.02."

{¶ 17} On appeal, appellant advances three arguments for our review: (1) the arbitration agreement is void as a matter of law, (2) the arbitration agreement is procedurally unconscionable, and (3) the arbitration agreement is substantively unconscionable.

{¶ 18} We first address appellant's argument that the arbitration agreement is void as a matter of law. Appellant cites R.C. Chapter 3721, which outlines the rights of residents in nursing homes and residential care facilities, as well as a letter from the Ohio Department of Health addressing binding-arbitration agreements in long-term care and residential care facilities. Appellant also notes that the American Medical Association, the American Bar Association, and the American Arbitration Association have expressed their concern with predispute arbitration agreements.

{¶ 19} This court is mindful of the concerns associated with predispute arbitration agreements in the nursing-home arena. Recognizing the delicate nature of the nursing-home admission process, this court, in *Manley v. Personacare of Ohio*, 11th Dist. No. 2005–L–174, 2007-Ohio-343, 2007 WL 210583, at ¶ 29, stated:

{¶ 20} "The fact that a resident is signing an arbitration agreement contemporaneously with being admitted into a nursing home is troubling. By definition, an individual being admitted into a nursing home has a physical or mental detriment that requires them to need the assistance of a nursing home. Further, the reality is that, for many individuals, their admission to a nursing home is the final step in the road of life. As such, this is an extremely stressful time for elderly persons of diminished health."

{¶ 21} In addition, we are aware of the movement at the federal level to ban certain types of nursing-home arbitration agreements. Known as the "Fairness in Nursing Home Arbitration Act," H.R. 1237 (which was introduced on February 26, 2009, but was discharged on June 21, 2010) aimed to amend the Federal Arbitration Act to invalidate predispute arbitration agreements between a long-term nursing home and a resident. Additionally, S. 512, a Senate companion bill (which was introduced on March 3, 2009) is pending in the Senate Judiciary Committee. Yet because this legislation has not been passed and the General Assembly has not acted to invalidate predispute arbitration agreements, this court is bound by current law.

{¶ 22} Appellant further asserts that R.C. 3721.10 through 3721.17 set forth rights granted by law to nursing-home patients and that R.C. 3721.13(C) prohibits any attempt to waive those rights. Appellant fails, however, to identify any specific statutorily enumerated right that the arbitration agreement purports to waive. Therefore, appellant's first argument is without merit.

{¶ 23} We review de novo the legal issue of whether an arbitration provision in an underlying contract is unconscionable. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, at ¶ 12. The determination of whether a contractual provision is unconscionable is fact-dependant and requires an analysis of the circumstances of the particular case before the court. Id., citing *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 13. Pursuant to this standard, this court possesses a plenary power of review affording the trial court's analysis no deference. *Eagle v. Fred Martin Motor Co.* at ¶ 11.

{¶ 24} Ohio public policy favors arbitration, and, therefore, arbitration provisions are ordinarily valid and enforceable. See R.C. 2711.01(A). As a result, a court must indulge a strong presumption in favor of arbitration and resolve any doubts in favor of arbitrability. *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, at ¶ 6, citing *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 311, 610 N.E.2d 1089. "However, an arbitration provision may be held unenforceable under [R.C. 2711.01(A)] on 'grounds that exist at law or in equity for the revocation of any contract.'" Id. at ¶ 6. One such ground is unconscionability. Id.

{¶ 25} "An unconscionable contract clause is one in which there is an absence of meaningful choice for the contracting parties, coupled with draconian contract terms unreasonably favorable to the other party." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 30. An arbitration provision can be rendered invalid where a party demonstrates that the provision is both procedurally and substantively unconscionable. *Feather-*

*stone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, at ¶ 13.

{¶ 26} Substantive unconscionability goes to the specific terms of the contract. *Ball v. Ohio State Home Servs., Inc.,* 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, at ¶ 7. When considering substantive unconscionability, the court should observe whether the terms of the contract are commercially reasonable. *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 31. With respect to this issue, the Second Appellate District has observed:

{¶ 27} "Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular * * * clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294.

{¶ 28} The Supreme Court of Ohio has observed that it has not adopted a bright-line set of factors for determining substantive unconscionability, because "[t]he factors to be considered vary with the content of the agreement at issue." *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 33.

{¶ 29} Alternatively, procedural unconscionability requires a court to consider factors related to the bargaining power of each party, "including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 31. "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Porpora v. Gatliff Bldg. Co.,* 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 7.

{¶ 30} "Additional factors that may contribute to a finding of procedural unconscionability include the following: ' "belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." ' " *Hayes v. Oakridge Home,* 122 Ohio

St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 24, quoting *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 44, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

### Procedural Unconscionability

{¶ 31} In his brief, appellant asserts the arbitration agreement is procedurally unconscionable because (1) Personacare possessed superior knowledge relating to business, contracts, and litigation as compared to Wascovich, a 72–year–old retired truck driver, diagnosed with Alzheimer's disease, with no experience in litigation, reviewing, or negotiating contracts, (2) the personal representative of Personacare did not explain the consequences of signing the arbitration agreement, since she, herself, did not understand how the arbitration clause would affect Wascovich, and (3) the arbitration agreement was adhesive in nature.

{¶ 32} Appellant presented the affidavit of Hendrickson, who was employed at Personacare at the time of Wascovich's admission and averred that she was trained on the admission procedure. Hendrickson stated that she was not trained to read the contents of the arbitration agreement to new residents, that she did not explain to new residents about the effects of signing the arbitration agreement, i.e., how arbitration affected the discovery process, that she was not trained to understand the differences between litigation and arbitration, and that she explained to new residents that the arbitration agreement would enable residents to resolve disputes "faster than litigation." Hendrickson further averred that she never had a new resident make changes to the arbitration agreement and that she did not notify residents that they could make changes to the arbitration agreement.

{¶ 33} Appellant, the personal representative of decedent's estate, also presented his own affidavit, in which he averred that Wascovich, 72 years of age at the time he was admitted into the nursing home, was transferred directly from the hospital. Appellant stated that Wascovich was a retired truck driver, that he never had any experience related to the review and negotiation of contracts, and that he never had any experience with litigation or being a party to a lawsuit. Appellant further averred that Wascovich had Alzheimer's disease.

{¶ 34} The Supreme Court of Ohio has held that a voluntarily executed arbitration agreement is not rendered procedurally unconscionable solely by the age of the resident. See *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at paragraph one of the syllabus. However, the court in *Hayes* made it clear that it was deciding the case based solely on the record. "Contrary to the court of appeals' and Hayes's assertions," the record before the *Hayes* court contained no evidence regarding "Hayes's educational background, business acumen, or experience." Id. at ¶ 26. "As the party challenging the

enforceability of the arbitration agreement, it was Hayes's burden to come forward with evidence supporting her challenge. She did not satisfy that burden. Indeed, the paucity of any evidence in support of her claims is notable." Id. at ¶ 27.

{¶ 35} Unlike the record in *Hayes*, the record in this case contains significant, relevant information with regard to this issue.

{¶ 36} In *Manley v. Personacare of Ohio*, 2007-Ohio-343, 2007 WL 210583, at ¶ 21–22, this court found that an arbitration agreement signed during the admissions process was procedurally unconscionable. As in the instant case, the appellant in *Manley* was transferred directly from the hospital to the nursing home. Similarly, the appellant in *Manley* did not have a friend or family member accompany her during the admissions process.

{¶ 37} Further, according to the affidavit of appellant, Wascovich did not have any prior legal experience or expertise, and Wascovich did not have an attorney present at the time of admission. Id. at ¶ 23.

{¶ 38} Wascovich's cognitive abilities must also be taken into consideration. Appellant averred that Wascovich, upon being admitted into the nursing home, had been diagnosed with Alzheimer's disease. As the trial court observed, however, appellant failed to produce any evidence as to Wascovich's actual level of cognitive impairment. Therefore, we agree with the trial court that this factor "weigh[ed] only minimally in favor of finding the [arbitration agreement] procedurally unconscionable."

{¶ 39} While the affidavit of Hendrickson supplied by appellee contains numerous accounts of what she would have done in a typical admission, there is no information from any source that would indicate that Wascovich expressed both an understanding and willingness to sign the arbitration agreement. A brief comparison of the multiple signatures obtained on that date reflects, at the very least, some physical impairment with the ability to sign. Under these circumstances, there should be some testimony or evidence that Wascovich had the mental capacity to enter into a contract of any kind, let alone one that Hendrickson herself did not comprehend.

{¶ 40} Appellant has also put forth evidence that the arbitration agreement is adhesive in nature. The affidavit of Hendrickson maintains that the agreement was drafted by Kindred Corporation, the healthcare services company of which Personacare is a subsidiary. Hendrickson further averred that she did not inform Wascovich that he could make changes to the arbitration agreement and that no resident has ever made changes to the agreement.

{¶ 41} An adhesion contract is a " 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms.'" *Taylor Bldg. Corp. of Am. v. Benfield,* 168 Ohio App.3d 517, 2006-Ohio-4428, 860 N.E.2d 1058, at ¶ 21, quoting Black's Law Dictionary (8th Ed. 2004) 342. Despite the strong public policy in favor of arbitration, a weaker presumption arises when an arbitration clause is found in a contract of adhesion. *Sikes v. Ganley Pontiac Honda, Inc.,* 8th Dist. No. 82889, 2004-Ohio-155, 2004 WL 67224, at ¶ 15. Although an adhesion contract is not per se unconscionable, "the more standardized the agreement and the less a party may bargain meaningfully, the more susceptible the contract or a term will be to a claim of unconscionability." *O'Donoghue v. Smythe, Cramer Co.,* 8th Dist. No. 80453, 2002-Ohio-3447, 2002 WL 1454074, at ¶ 24. Nonetheless, "it is incumbent upon the complaining party to put forth evidence demonstrating that the clause is adhesive and, moreover, that as a result of the adhesive nature, the clause is unconscionable." *Sikes v. Ganley Pontiac Honda, Inc.,* 2004-Ohio-155, 2004 WL 67224, at ¶ 15.

{¶ 42} Based on the factors presented, we conclude that Wascovich's bargaining power was substantially outweighed by the bargaining power of Personacare. Consequently, the arbitration agreement at issue was procedurally unconscionable, and appellant's second argument is well taken. Finding procedural unconscionability, we must now determine whether appellant presented evidence to substantiate his claim that the arbitration agreement was substantively unconscionable.

### Substantive Unconscionability

{¶ 43} Appellant states that the arbitration agreement is substantively unconscionable because (1) a person is not informed of the advantages of litigation, i.e., the benefits of a jury, the discovery process, and the award, if successful, (2) the agreement promotes arbitration, and (3) it requires a plaintiff to pay high fees for the filing of a claim and the hourly rate for each arbitrator.

{¶ 44} While there are some factors that weigh against a finding of substantive unconscionability, those factors are outweighed by the factors supporting unconscionability. We first address those factors that weigh against substantive unconscionability.

{¶ 45} First, the arbitration agreement at issue was optional and was a separate, stand-alone agreement. At the top of the agreement, in bold, capitalized letters, it states: "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT BETWEEN RESIDENT AND FACILITY (OPTIONAL)." "[T]he fact that this statement was written in bold type in the arbitration agreement, which was a separate agreement, strongly suggests that admission to the facility was

not contingent upon signing the arbitration agreement." *Manley v. Personacare of Ohio,* 2007-Ohio-343, 2007 WL 210583, at ¶ 37.

{¶ 46} Second, the arbitration agreement contained a section entitled "Understanding of the Resident" in boldface. The following section was identical to that contained in *Manley,* stating:

{¶ 47} "Understanding of the Resident. By signing this agreement, the Resident is acknowledging that he/she understands the following: (1) he/she has the right to seek legal counsel concerning this Agreement; (2) the execution of this Agreement is not a precondition of admission or to the furnishing of services to the Resident by Facility, and the decision of whether to sign the Agreement is solely a matter for the Resident's determination without any influence; (3) this Agreement may not even be submitted to Resident when Resident's condition prevents him/her from making a rational decision whether to agree; (4) nothing in this Agreement shall prevent Resident or any other person from reporting alleged violations of law to the Facility, or the appropriate administrative, regulatory or law enforcement agency; (5) the ADR process adopted by this Agreement contains provisions for both mediation and binding arbitration, and if the parties are unable to reach settlement informally, or through mediation, the dispute shall proceed to binding arbitration; and (6) agreeing to the ADR process in this agreement means that the parties are waiving their right to a trial in court, including their right to a jury trial, their right to a trial by judge, and their right to appeal the decision of the arbitrator(s) in a court of law."

{¶ 48} The arbitration agreement also contained clauses relating to the discovery process and the costs associated with alternative dispute resolution. For example, the agreement provides that Personacare "shall pay the mediator's and arbitrator(s)' fees and other reasonable costs (excluding the Resident's attorney's fees) associated with the mediation and/or arbitration up to a maximum of five days of the arbitration hearing." If this process lasts longer than five days, the costs would be split between the parties. "These provisions did not have a deterrent effect on a resident's decision to bring a claim against Personacare." *Manley,* 2007-Ohio-343, 2007 WL 210583, at ¶ 40.

{¶ 49} The arbitration clause also allowed for revocation by the resident within 30 days of signing the agreement. In *Manley,* we stated, "The ability to reject the arbitration clause at a later time also weighs in favor of upholding the arbitration agreement. The resident was given an opportunity to think about his or her decision and, if unhappy with the agreement, the opportunity to reject the agreement. This 30–day period also provided the resident with an opportunity to discuss the matter with a family member or an attorney." Id. at ¶ 39.

{¶ 50} There are factors that weigh in favor of finding substantive unconscionability. First, the almost total lack of procedural protections weighs heavily

against Personacare. For example, there is nothing in the record to indicate that Wascovich appeared lucid and cognizant on the date he signed his admission documents. There are only assertions about what the admissions process normally includes. Wascovich may have indicated no understanding regarding what he was signing. The burden is on Personacare to produce *something* that reflects that they were dealing with an person who, at a minimum, had the capacity to contract. Lacking such information in the record, *any* substantive deficiency would be fatal.

{¶ 51} The main problem with affirming the substantive aspect of the agreement, however, is that under the facts of this case, the normal factors favoring arbitration do not apply. This is because there is no economy or efficiency achieved. In fact, the contrary is true, because a party may be forced to participate in two proceedings, instead of one. Rather than achieve cost savings, there would be a substantial increase in costs. The potential exists for an increase in the number of depositions and hearings, duplicate discovery, and expert testimony and expense in two forums. The addition of these factors outweighs the factors that weigh in favor of substantive conscionability.

{¶ 52} Most importantly, enforcement of the agreement in this case may result in inconsistent decisions on the issue of liability—something that should be avoided in every case.

{¶ 53} The parties and the issues are closely aligned, if not identical, to those in *Peters*. Though *Peters* noted that arbitration is "cost effective" and "permits parties to achieve permanent resolution of their disputes in an expedient manner," the exact opposite result occurs in this case if the arbitration agreement is enforced. *Peters*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, at ¶ 20. Unlike this case, in *Peters* there was no challenge to the arbitration agreement. Also, in *Peters* it does not appear that there was an issue with the procedural execution of the document. Here, both the trial court and this court have found it to be procedurally unconscionable. It does not comport with logic or reason to substantively require an inefficient and potentially inconsistent path from here.

{¶ 54} We find the arbitration agreement to be substantively unconscionable. Because we have found the arbitration agreement to be procedurally unconscionable and substantively unconscionable, we reverse the decision of the trial court.

{¶ 55} In his brief, appellant also maintains that there was no consideration, because Wascovich did not receive anything in exchange for giving up his right to a trial by jury. This argument has been rejected by the Supreme Court of Ohio in *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 42–43. The *Hayes* court stated:

{¶ 56} "The waiver of the right to a jury trial is a necessary consequence of agreeing to arbitration and is not unconscionable. * * * Both parties gave up their right to trial, as well as all correlating rights in the judicial process * * *. Moreover, Hayes was not required to sign the agreement, and it was unequivocally not a condition of her admission to the nursing home. Sufficient consideration exists for the arbitration agreement * * *." See also *Manley v. Personacare of Ohio,* 2007-Ohio-343, 2007 WL 210583, at ¶ 43–47 (finding sufficient consideration in the arbitration agreement).

{¶ 57} Appellant also argues that the arbitration agreement violated federal law, since Personacare received additional consideration—Wascovich's waiver of his right to a jury trial—when he signed the agreement. As in *Manley,* the arbitration agreement was not a precondition of admission. Id. at ¶ 50. Furthermore, appellant's argument has been addressed and rejected by this court in *Manley,* id., at ¶ 48–50.

{¶ 58} Based on the opinion of this court, the judgment of the Lake County Court of Common Pleas is hereby reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

RICE, J., concurs.

O'TOOLE, J., concurs in judgment only.

O'TOOLE, Judge, concurring in judgment only.

{¶ 59} I concur in the conclusion reached by the majority, finding the arbitration contract both procedurally and substantively unconscionable. I write separately because my route to finding it substantively unconscionable is different.

{¶ 60} As I have written previously: "Courts should scrutinize consumer contracts more closely for unconscionability * * *. Commercial reasonability is not the only consideration when analyzing the substantive unconscionability of a contract." *Manley v. Personacare of Ohio,* 11th Dist. No. 2005–L–174, 2007-Ohio-343, 2007 WL 210583, at ¶ 54. (O'Toole, J., dissenting.) See also *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 49, quoting *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 472, 700 N.E.2d 859 ("To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract 'necessarily engenders more reservations than an arbitration clause in a different setting,' such as a collective-bargaining agreement or a commercial contract between two businesses"). In this case, I respectfully find the reasoning of the majority slightly tautological: the arbitration contract is commercially unreasonable (and thus, substantively unconsciona-

ble), since it requires appellant to pursue two separate litigations in order to enforce the rights of the estate. I agree—but, since wrongful-death claims are not subject to arbitration unless the beneficiaries agree, while a decedent may bind his or her estate to arbitrate a survival action, such inefficiencies inhere in Ohio's legal system. Cf. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, at ¶ 15–19.

{¶ 61} Rather, I rely on two points. First, I respectfully agree with the concurrence in *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, that arbitration contracts such as that at issue are substantively unconscionable since they violate the public policy of Ohio, as expressed by the General Assembly in enacting R.C. Chapter 3721. Writing for herself and Justice Lundberg Stratton, Justice Lanzinger stated:

{¶ 62} "I depart, however, from the majority's conclusion that this arbitration agreement is not substantively unconscionable. I agree with the dissent that the agreement strips away statutory protections granted to nursing-home residents and defeats the will of the legislature. The majority cites commercial cases in emphasizing the public policy that favors arbitration rights. But the General Assembly has also expressed clearly its intent to protect nursing-home residents through enactment of R.C. Chapter 3721. This is the first time we have considered an arbitration agreement in the nursing-home setting, and we look to the content of the agreement itself to determine whether it is substantively unconscionable. The arbitration clause here waives appellee's rights to punitive damages and attorney fees but refers to patient rights only by implication in the encompassing words 'any dispute' to be subject to arbitration. Because the General Assembly has granted special rights and remedies to those in appellee's circumstances, unless an arbitration clause specifically explains the rights and remedies to be affected by the arbitration agreement, it is substantively unconscionable." Id. at ¶ 47.

{¶ 63} Second, I am dismayed by the effects that collateral estoppel might work. As the Court of Appeals for the Eighth Appellate District has held: "An arbitration award has the same preclusive effect as a court judgment for the matters it decided. * * * [T]he party seeking to avoid issue preclusion has the burden of showing that the arbitrators did not decide that issue." *Cleveland v. Assn. of Cleveland Fire Fighters, Local 93* (1984), 20 Ohio App.3d 249, 254–255, 485 N.E.2d 792. See also *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 184, 637 N.E.2d 917 (holding that the decedent's beneficiaries are barred by collateral estoppel from relitigating in a wrongful-death action any issues previously resolved in an action by the decedent against the tortfeasor). Many similar issues inhere in the resolution of any survival action and wrongful-death action involving the same decedent. *Peters,* 115 Ohio St.3d 134, 2007-Ohio-4787, 873

N.E.2d 1258, at ¶ 16. I am reluctant to encourage as conscionable contracts that may cause a decedent to waive his or her beneficiaries' rights to resolution by our trial courts of all the issues involved in a wrongful-death action simply because a survival action, in arbitration, is likely to conclude more swiftly.

{¶ 64} I respectfully concur.