[Cite as *Price v. Jeff Wyler Eastgate, Inc.*, 2025-Ohio-4707.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

KENDAL PRICE, et al.,             :

     Appellants,               :

                                    :

  - vs -                      :

                                      :

JEFF WYLER EASTGATE, INC.,   :

     Appellee.                :

CASE NO. CA2024-12-096

OPINION AND
JUDGMENT ENTRY
10/14/2025

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. CVH 01204

Christopher T. Travis, for appellants.

Rendigs, Fry, Kiely & Dennis, and Madeline L. High and Jonathan P. Saxton, for appellee.

## **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Appellants, Kendal and Jenny Price, appeal a decision of the Clermont County Court of Common Pleas granting the motion of appellee, Jeff Wyler Eastgate,

Inc., to stay judicial proceedings pending arbitration.[1]

{¶ 2} On July 16, 2023, the Prices went shopping for a new vehicle at Jeff Wyler, a local car dealership located in Batavia, Clermont County, Ohio. Once there, the Prices settled on a new Dodge Charger with a purchase price of $70,000. To finance their purchase, the Prices provided Jeff Wyler with certain financial information, including their employment and income. The Prices also executed a Retail Purchase Agreement ("RPA") and a Retail Installment Contract and Security Agreement ("RICSA") provided to them by Jeff Wyler. Both the RPA and the RICSA included a provision that required the Prices to arbitrate any dispute that may arise between them and Jeff Wyler regarding their application for credit or financing the purchase of the Dodge Charger. Upon executing the RPA and RICSA, the Prices provided Jeff Wyler a down payment of $1,500 and drove the Dodge Charger home.

{¶ 3} On August 14, 2023, Jeff Wyler called the Prices to inform them that their financing had been denied, thereby requiring the Prices to return the Dodge Charger to Jeff Wyler pursuant to the terms set forth in the RPA and RICSA. Shortly after receiving this call, the Prices returned the Dodge Charger to Jeff Wyler and were provided with a refund of their $1,500 down payment.

{¶ 4} On August 30, 2024, the Prices filed a complaint alleging that Jeff Wyler had committed fraud, unjust enrichment, and conversion, and violated the Ohio Consumer Sales Practices Act, the Equal Credit Opportunity Act, and the Gramm-Leach-Bliley Act, by falsifying the financial information they provided to Jeff Wyler "in order to increase the odds that initial financing would be approved." Specifically, the Prices alleged that they dictated their financial information to Jeff Wyler's agent and reasonably relied

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.

on the agent's representations that their information was entered accurately, but the agent inflated their income on the loan application and then directed them to provide a signature on an electronic device. The Prices alleged that the electronic device caused their signature "to be adhered to the falsified loan application thereby making the application signatures de facto forgeries." The Prices attached copies of the RPA and RICSA to their complaint (referring to them collectively as a "purported contract") and asserted that they were "not valid" and were "obtained via fraud." The RPA and RICSA both contain what purports to be the Prices' signatures.

{¶ 5} Jeff Wyler moved to dismiss the Prices' complaint and/or stay the proceedings and compel arbitration, arguing that the Prices were subject to the arbitration agreement set forth in the RPA and RICSA. As pertinent here, Jeff Wyler filed its motion pursuant to R.C. 2711.01, 2711.02(B), and 2711.03.

{¶ 6} The Prices filed a memorandum in opposition to Jeff Wyler's motion, claiming that "they did not assent to arbitration, and did not sign such an agreement." In support of their claim, the Prices attached two nearly identical affidavits in which each averred, "I never signed, was presented with or saw an Arbitration agreement." The Prices argued it was necessary for the trial court to hold an evidentiary hearing to determine whether their signatures on the RPA and RICSA were forgeries and whether the arbitration agreement was valid.

{¶ 7} On November 13, 2024, without holding a hearing, the trial court issued a decision and entry granting Jeff Wyler's motion to stay the proceedings pending arbitration pursuant to R.C. 2711.02(B) and compel arbitration. In so holding, the trial court determined that the Prices had, in fact, executed the RPA and RICSA, which both included an arbitration agreement. In addressing Jeff Wyler's motion, the trial court defined the dispositive issue as whether the Prices' claims were subject to the arbitration

agreement, summarily found that "[i]f the validity of the arbitration agreement is an issue then the arbitration process can address it," and held that the Prices' "claims fall clearly within the scope of the broad arbitration provision." The trial court concluded, "This Court is satisfied that the issues involved in this action are referable to arbitration under the parties' written agreement for arbitration, in accord with R.C. 2711.02(B)." Therefore, the trial court stayed the action pending arbitration and further ordered, "Plaintiffs are compelled to submit their claims against Wyler to arbitration in accordance with the contract requirements."

{¶ 8} The Prices now appeal, raising one assignment of error:

THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS BY GRANTING DEFENDANT'S MOTION TO STAY PENDING ARBITRATION.

{¶ 9} The Prices argue that the trial court erred in staying the proceedings pending arbitration without holding an evidentiary hearing. The Prices assert that the trial court made the wrong inquiry when it determined whether the arbitration agreement was "broad enough to incorporate" the complaint instead of first determining the validity of the arbitration agreement. In other words, the Prices assert that the trial court should have determined the validity of the arbitration agreement instead of deferring the matter to the arbitrator for resolution.

{¶ 10} Generally, an appellate court reviews a trial court's disposition on a motion to stay proceedings and compel arbitration under an abuse-of-discretion standard. *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 2007-Ohio-1655, ¶ 7 (12th Dist.). However, when the appellate court is presented with a purely legal question, such as whether a particular claim is arbitrable, the appropriate standard of appellate review is de novo. *Taylor Bldg. Corp. of Am. v. Benfield*, 2006-Ohio-4428, ¶ 15 (12th Dist.). Under a de novo review, an appellate court does not defer to a trial court's decision. *Id.*

- 4 -

{¶ 11} R.C. Chapter 2711 provides the statutory framework for arbitration. A party seeking to enforce an arbitration provision in the face of pending litigation "may choose to move for a stay under R.C. 2711.02, or to petition for an order for the parties to proceed to arbitration under R.C. 2711.03, or to seek orders under both statutes." *Maestle v. Best Buy Co.*, 2003-Ohio-6465, ¶ 18. It is undisputed that Jeff Wyler sought orders under both statutes.

{¶ 12} As pertinent here, R.C. 2711.02(B) provides,

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 13} R.C. 2711.03 (A) permits a trial court to compel arbitration once it is "satisfied that the making of the agreement for arbitration . . . is not in issue." However, "[i]f the making of the arbitration agreement . . . is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue." R.C. 2711.03(B). Thus, the language of R.C. 2711.02(B) and 2711.03 unequivocally provide that it is the trial court that must be satisfied concerning the making of an arbitration agreement as a prerequisite to staying the proceedings pending arbitration and compelling arbitration.

{¶ 14} The record plainly shows that the Prices challenged the validity of the arbitration agreement in their complaint as well as in their memorandum opposing Jeff Wyler's motion to stay the proceedings and compel arbitration when they claimed that the RPA and RICSA were "not valid" and were "obtained via fraud" and that "they did not assent to arbitration, and did not sign such an agreement," and when they both averred

- 5 -

in their affidavits, "I never signed, was presented with or saw an Arbitration agreement." In its entry granting Jeff Wyler's motion, the trial court framed the dispositive issue before it as whether the RPA and RICSA entitled Jeff Wyler to resolve the parties' dispute by arbitration, summarily found that "[i]f the validity of the arbitration agreement is in issue then the arbitration process can address it," then focused on whether the Prices' claims fell within the scope of the arbitration agreement, and concluded it was "satisfied that the issues involved in this action are referable to arbitration under the parties' written agreement for arbitration, in accord with R.C. 2711.02(B)."

{¶ 15} This court has held that a trial court is required to make two determinations prior to granting a stay of proceedings pending arbitration under R.C. 2711.02. "First, the court must be satisfied that the issue involved in the action is referable to arbitration under a *valid* agreement in writing for arbitration. Second, the court must determine that the applicant for the stay is not in default in proceeding with arbitration. Once these conditions are met, a stay is required." (Emphasis added.) *Miller v. UBS Fin. Servs., Inc.*, 2021-Ohio-891, ¶ 12 (12th Dist.). *See also Dan Eynon Ents. v. Mid-America Diesel*, 2015-Ohio-1089, ¶ 15 (12th Dist.) (R.C. 2711.02[B] provides that a "court is required to stay proceedings once a party moves the court to stay the action and the court determines that there is a *valid* and binding arbitration agreement").

{¶ 16} "[W]hen a party opposing a R.C. 2711.02 motion to stay has alleged that the separate arbitration agreement is invalid, the trial court must consider those allegations under existing state law. It may not refer those matters to the arbitrator for resolution." *Cross v. Carnes*, 132 Ohio App.3d 157, 166 (11th Dist. 1998). Thus, whether there is a valid agreement in writing for arbitration under R.C. 2711.02(B) is a threshold issue before a trial court may consider whether the "issue involved in the action is referable to arbitration" and then stay proceedings pending arbitration.

{¶ 17} In light of the foregoing, we find that the trial court made a critically incorrect finding that "[i]f the validity of the arbitration agreement is in issue then the arbitration process can address it." The trial court's finding that the arbitrator may determine the "validity of the arbitration agreement" is an error of law. Therefore, because the trial court erred when it failed to first determine whether a valid agreement to arbitrate exists and instead referred the validity of the arbitration agreement to the arbitrator for resolution, we reverse the trial court's decision granting Jeff Wyler's motion to stay the proceedings under R.C. 2711.02(B) and remand this matter to the trial court to make such a determination. Upon remand, we note that R.C. 2711.02(B) "does not require an evidentiary hearing." *Ault v. Parkview Homes, Inc.*, 2009-Ohio-586, ¶ 8 (9th Dist.); *see also RM Riggle Ents., Inc. v. Commerce Park Place Holdings, L.L.C.*, 2021-Ohio-4215, ¶ 47 (8th Dist.); *Robie v. Maxill, Inc.*, 2021-Ohio-2644, ¶ 46 (11th Dist.). Whether to hold an evidentiary hearing is instead left within the trial court's sound discretion. *Maestle*, 2003-Ohio-6465 at ¶ 19.

{¶ 18} The Prices' assignment of error is sustained.

{¶ 19} Judgement reversed and remanded for further proceedings according to law and consistent with this opinion.

PIPER, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded for further proceedings according to law and consistent with the above Opinion.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge