[Cite as *Pearson v. Manorcare Health Servs.*, 2015-Ohio-5460.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| CHRISTINE PEARSON, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF GARY BANKS, (DECEASED), | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2014-L-047** |
| Plaintiff-Appellee, | : | |
| | : | |
| - vs - | : | |
| | : | |
| MANORCARE HEALTH SERVICES - WILLOUGHBY, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 13 CV 001703.

Judgment: Affirmed.

*Blake A. Dickson, James A. Tully,* and *Mark D. Tolles, II,* The Dickson Firm, L.L.C., 3401 Enterprise Parkway, Suite 420, Beachwood, OH 44122 (For Plaintiff-Appellee).

*Danny Merril Newman, Jr.,* and *Michael M. Mahon,* Reminger Co., LPA, 525 Vine Street, Suite 1700, Cincinnati, OH 45202; and *Thomas A. Prislipsky,* Reminger Co., LPA, 11 Federal Plaza Central, Suite 1200, Youngstown, OH 44503 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, ManorCare Health Services – Willoughby, and twenty-one others involved in the operation of a nursing home, appeal two judgments of the Lake County Court of Common Pleas. In the first judgment, the trial court overruled

appellants' motions to compel discovery and for leave to file a new brief based upon the compelled discovery. In the second judgment, the court denied appellants' motion to stay all trial proceedings pending arbitration. For the following reasons, we affirm both judgments.

{¶2} The underlying action pertains to the death of Gary Banks following his stay at appellants' nursing home in Willoughby, Ohio. Banks was born, raised, and attended high school in Cleveland, Ohio. Although Banks received a diploma at the end of high school, he did not take any of the usual courses required for graduation. Instead, due to his inability to read and understand written documents, his coursework was limited to special education classes. At some point, he was diagnosed as mentally retarded/developmentally disabled ("MRDD") and a paranoid schizophrenic.

{¶3} Following high school, Banks did not have any additional formal education and continued to reside with his mother until her death in 1993. He then moved into an independent living facility where he was assigned a caseworker to assist him in performing many day-to-day chores.

{¶4} After approximately twelve years at the independent living facility, Banks moved to the Gables, an intermediate care facility in Madison, Ohio. At the Gables, the amount of assistance Banks received from the staff increased over time. In addition, the Gables staff assisted Banks in obtaining part-time jobs, such as packing light bulbs and cleaning churches.

{¶5} While at the Gables, it was recommended that Banks execute a limited power of attorney in favor of his sister, appellee-Christine Pearson, for purposes of making medical decisions. After the document was prepared, a social worker at the

2

facility presented it to Banks and Pearson, and explained the purpose of the document to them. Banks legibly signed the document, and it was treated as legally binding throughout the remainder of his life.

{¶6} After living at the Gables for six years, Banks developed difficulty moving his limbs, especially his legs. Eventually, he was diagnosed with progressive quadriplegia, a condition the Gables could not manage. In an attempt to alleviate Banks' physical problems, he was scheduled for surgery on two herniated discs in his back, and he was transferred from the Gables to the Cleveland Clinic for the surgery. The operation was successful, but Banks did not return to the Gables. Instead, two days after surgery, he was transferred to appellants' nursing home.

{¶7} No other person, including Pearson, accompanied Banks when he arrived at the nursing home. At the outset of the admissions process, a nurse made an initial assessment of Banks' condition. In performing her duties, the nurse had possession of hospital records stating that Banks was mentally retarded. Nevertheless, in going forward with the assessment, the nurse noted that Banks did not appear to have any difficulty focusing his attention, and that his cognitive abilities were not disorganized or incoherent. As a result, the nurse allowed the nursing home's admissions coordinator to proceed with the process.

{¶8} Banks executed an admissions agreement exceeding twenty pages. In addition, the admissions coordinator showed Banks a separate two-page document entitled: "Voluntary Arbitration Agreement." The first paragraph of this agreement provides:

> {¶9} "THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN

3

THEM. PLEASE READ CAREFULLY BEFORE SIGNING. THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED. ARBITRATION IS DESCRIBED IN THE VOLUNTARY ARBITRATION PROGRAM BROCHURE COPY, ATTACHED AND MADE PART OF THIS AGREEMENT."

{¶10} In addition to the above, the arbitration agreement has a separate clause giving the patient the right to "change his mind" even after initially executing the agreement. The clause states that the patient can cancel the arbitration agreement by sending written notice to the nursing home's administrator within 30 days of admission to the facility.

{¶11} According to the nursing home's admissions coordinator, she read every word of the arbitration agreement to Banks before she asked whether he was willing to execute the document. In response, Banks signed and dated the arbitration agreement. Moreover, in the 30 days following admission, Banks did not cancel the arbitration agreement.

{¶12} Approximately 35 days after entering the nursing home, Banks returned to the Cleveland Clinic for a follow-up appointment, where two infected pressure ulcers were found on Banks' left hip and sacrum. Additional pressure ulcers were found on his ankles. Even though a surgical procedure was performed on the two infected pressure ulcers, Banks ultimately contracted osteomyelitis, and died on May 25, 2013.

{¶13} Two months later, Pearson, as the personal representative of the estate of her deceased brother, brought the underlying action against the 22 defendants-appellants, as the owners/operators of the nursing home. Pearson's complaint asserts five claims sounding in personal injury, wrongful death, medical negligence, ordinary negligence, and violations of R.C. 3721.13, the statutory "bill of rights" for all nursing

4

home residents.

{¶14} Appellants answered the complaint and in conjunction with the answer, moved the trial court to stay all trial proceedings pending the submission of Pearson's claims to arbitration, pursuant to R.C. 2711.02. Attached to the motion was a copy of the voluntary arbitration agreement.

{¶15} Pearson immediately moved for an extension of time in which to respond to appellants' stay motion, arguing that discovery was needed in regard to the procedure that was followed during the admissions process. The trial court granted the extension until February 12, 2014. During this 90-day period, Pearson took the depositions of the nurse who conducted Banks' initial assessment and the admissions coordinator who read the arbitration agreement to him.

{¶16} Pearson submitted her response on February 20, 2014, asserting 11 challenges to the validity and enforceability of the arbitration agreement. As her primary challenge, she argued that the motion to stay must be denied because the arbitration agreement is unconscionable. Attached to the response was Pearson's affidavit, in which she averred that her deceased brother was not able to read or comprehend any written document due to his mental retardation. She also made averments concerning the type of assistance Banks received while he was a resident of the Gables.

{¶17} Two days before Pearson's response was filed, appellants moved for a three-week extension of time in which to submit their reply. They contended that, since Pearson had relied heavily upon her own affidavit in her response, they should be given an opportunity to take her deposition before replying. The trial court granted the extension until March 12, 2014.

5

{¶18} Approximately two weeks before appellants' reply was due, Pearson moved the trial court for leave to submit a sur-reply on the stay issue. She maintained that, since appellants were engaging in additional discovery, she must be permitted to respond to any new evidentiary point. The court granted the motion for leave, giving her seven days from the filing of appellants' reply to submit the sur-reply.

{¶19} Appellants timely filed their reply on March 12, 2014. One week later, they submitted two motions: (1) for leave to file a response to Pearson's sur-reply; and (2) to compel compliance with a subpoena. In support of the second motion, they stated that, on the same date they moved for the three-week extension to file their reply, their trial counsel issued a subpoena to the Gables for any records relating to Banks' stay at the facility. They further asserted that the Gables never responded to the subpoena in light of correspondence it received from Pearson's trial counsel, threatening litigation if the requested records were disclosed. Appellants' motion to compel also addressed the substance of the privilege arguments that were raised in the correspondence.

{¶20} The trial court ultimately overruled the motions for leave and to compel. The court based its ruling entirely upon the finding that "all parties have been granted ample opportunity to brief the issues surrounding [appellants'] Motion to Stay Proceedings Pending Arbitration."

{¶21} Therefore, once Pearson filed her sur-reply, the trial court went forward on the motion to stay. In a judgment dated April 23, 2014, the court held that the arbitration agreement was not enforceable as to any of the claims in Pearson's complaint because it was both procedurally and substantively unconscionable. For this reason alone, the trial court overruled appellants' motion to stay without addressing any of Pearson's ten

6

other challenges to the arbitration agreement.

{¶22} In bringing this appeal from the denial of the stay motion, appellants raise two assignments of error for review. The first of these assignments contests the merits of the trial court's "unconscionability" analysis:

{¶23} "The trial court erred in finding that the Arbitration Agreement is unconscionable and unenforceable under R.C. 2711.02."

{¶24} At its core, the purpose of an arbitration agreement is to provide its parties an expeditious and economical way of resolving any dispute that could arise from their relationship. *See Hayes v. The Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶15. To the extent that arbitration is an alternative means of determining legal disputes, agreements to arbitrate further serve the purpose of decreasing the number of pending cases on court dockets. *Id.* Given the importance of the two interrelated purposes, the Ohio Supreme Court has recognized a presumption in favor of arbitration that is controlling whenever the dispute between the parties is covered under the terms of the arbitration agreement. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶26.

{¶25} The strong public policy favoring arbitration has also been declared by the Ohio General Assembly through enactment of the Ohio Arbitration Act, R.C. 2711.01 et seq. *Harrison v. Winchester Place Nursing & Rehab. Center*, 10th Dist. Franklin No. 12AP-327, 2013-Ohio-3163, ¶12, quoting *Henderson v. Lawyers Title Ins. Corp.*, 108 Ohio St.3d 265, 2006-Ohio-906, ¶48. R.C. 2711.01(A) states that arbitration provisions are generally considered valid and enforceable. R.C. 2711.02(B) then states a means by which a party can obtain enforcement of an arbitration term; i.e., the statute grants a

7

trial court the authority to stay any pending action based upon an issue that is referable to arbitration pursuant to a written arbitration agreement between the parties.

{¶26} Notwithstanding the existence of case law and statutory law encouraging the use of arbitration, an agreement to arbitrate can still be invalidated on any "grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One recognized reason for invalidating an arbitration agreement is unconscionability. *Wascovich v. Personacare of Ohio, Inc.*, 190 Ohio App.3d 619, 2010-Ohio-4563, ¶24 (11th Dist.).

{¶27} "The defense of unconscionability applies when the weaker of the contracting parties proves that it lacked the freedom of choice, understanding, and ability to negotiate the contract together with contract terms that unreasonably favor the stronger party." *Shearer v. VCA Antech, Inc.*, 10th Dist. Franklin No. 11AP-44, 2011-Ohio-5171, ¶23. Stated differently, "[a]n unconscionable contract clause is one in which there is an absence of meaningful choice for the contracting parties, coupled with draconian contract terms unreasonably favorable to the other party." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶30 (8th Dist.).

{¶28} As the foregoing readily indicates, unconscionability involves a two-prong determination: substantive unconscionability and procedural unconscionability. "A substantive unconscionability analysis considers whether the actual terms of the contract are commercially reasonable. 'Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party,

8

and whether alterations in the printed terms were possible.'" (Footnotes and citations omitted.) *Manley v. Personacare of Ohio*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343, ¶14. In *Hayes, supra,* the Ohio Supreme Court set forth additional factors that may contribute to a finding of procedural unconscionability. Those factors include:

{¶29} "'[K]nowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'" *Id.* at ¶24 quoting *Taylor Bldg. Corp. of Am. v. Benfeld,* 117 Ohio St.3d 352, 2008-Ohio-938, ¶43, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

{¶30} The burden of proving both prongs of unconscionability is upon the party asserting the defense. *Hayes*, *supra*, at ¶20. To carry this burden, the party is required to present a "quantum" of evidence demonstrating both the substantive and procedural prongs of the standard. *Id.*, quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834 (1993).

{¶31} Regarding any factual finding made by a trial court in an unconscionability analysis, an appellate court is required to accord due deference to the finding. *Jamison v. LDA Builders, Inc.*, 11th Dist. Portage No. 2011-P-0072, 2013-Ohio-2037, ¶21. As to the trial court's legal analysis based upon the factual findings, though, no deference is mandated. Appellate review is de novo. *Id.* Moreover, at both the trial and appellate levels, "the determination of whether a contractual provision is unconscionable is fact-dependent and requires an analysis of the circumstances of the particular case before the court." *Id.* at 22.

{¶32} Given that both the substantive and procedural prongs must be satisfied to establish unconscionability, the failure to prove one of the prongs alleviates the

9

necessity to review the remaining prong. *Shearer, supra*, at ¶29.

{¶33} We shall first address the trial court's determination that the contract was procedurally unconscionable. This court found procedural unconscionability of an arbitration agreement in *Manley, supra*. In *Manley*, this court observed:

> {¶34} The fact that a resident is signing an arbitration agreement contemporaneously with being admitted into a nursing home is troubling. By definition, an individual being admitted into a nursing home has a physical or mental detriment that requires them to need the assistance of a nursing home.* * * In most circumstances, it will be difficult to conclude that such an individual has equal bargaining power with a corporation that, through corporate counsel, drafted the form contract at issue. *Id.* at ¶29.

{¶35} Here, in finding the arbitration agreement procedurally unconscionable, the trial court found the following facts:

> {¶36} First, the arbitration agreement was signed by [Banks] while being admitted to a nursing home. Further, [Banks] went directly from the hospital to the nursing home. [Banks] was a mentally retarded man who could not read books, magazines, letters or documents on his own. He did not have any experience reviewing or negotiating contracts. He had no legal expertise, did not have an attorney present, and did not have any experience in litigation or arbitration.

{¶37} Appellants argue that the trial court's finding that the arbitration agreement is procedurally unconscionable is incorrect. Appellants challenge "the trial court's reliance upon Banks' alleged mental retardation." Appellants argue that the fact that Banks graduated high school; had executed a legal durable power of attorney two years earlier; was able to legibly sign his name; did not have any difficulty focusing; and "did not exhibit any signs of any altered level of consciousness" refutes the trial court's finding of procedural unconscionability.

{¶38} The trial court found procedural unconscionability, ruling:

{¶39} [w]hile Defendants argue that the terms of the Arbitration

10

Agreement were read to the Decedent and that the Decedent had the opportunity to ask questions or to alter the terms of the Arbitration Agreement, the Court finds that these factors are outweighed by the ones supporting a finding of procedural unconscionability. The circumstances surrounding Decedent's admission to Manor Care led to an absence of meaningful choice on the part of Decedent.

{¶40} The trial court possessed sufficient factual evidence to make a finding of procedural unconscionability. The affidavit of appellee, decedent's sister, described decedent's diminished mental abilities. Even though he possessed the ability to sign his own name, he was unable to read or write. He was diagnosed with MRDD and paranoid schizophrenia. He participated in special education classes throughout the entirety of his education. Decedent never held a job that required him to read or write. His family or assisted-living employees handled his personal matters including finances, scheduling appointments, and transportation to and from those appointments. Decedent was unable to conduct commercial transactions on his own because he could not properly count money, read, or write. Additionally, the deposition of Darlene Stincic, the admissions coordinator, demonstrates that although she read the agreement to decedent, she had difficulty explaining what arbitration is, how it works, and what rights he was relinquishing by signing the arbitration agreement. Under the circumstances, we conclude the trial court did not err in finding the agreement was procedurally unconscionable.

{¶41} With respect to substantive unconscionability, the trial court relied upon this court's holding in *Wascovich, supra*. In *Wascovich,* the deceased was an Alzheimer patient being transferred from a hospital to the nursing home facility. There was nothing in the record to indicate that the patient was lucid and cognizant on the

11

date he signed his admission documents. There were only assertions about what the admissions process normally includes. This court determined "the burden is on the nursing home to produce something that reflects it was dealing with an individual who, at a minimum had the capacity to contract. Lacking such information in the record, *any* substantive deficiency would be fatal." *Id.* at ¶50.

**{¶42}** The trial court determined the case sub judice was similar to *Wascovich* because there was nothing to indicate Banks had any understanding of the content of the agreement when he signed it.

**{¶43}** In explaining substantive unconscionability, the Ohio Supreme Court has stated that: "[s]ubstantive unconscionability goes to the specific terms of the contract. When considering substantive unconscionability, the court should observe whether the terms of the contract are commercially reasonable." *Hayes, supra,* at ¶26.

**{¶44}** R.C. 2711.23 outlines certain terms to which an arbitration agreement is subject for purposes of determining its validity and enforceability. In effect, that statute provides some guidance for determining whether the agreement is commercially reasonable. R.C. 2711.23 provides, in relevant part:

**{¶45}** To be valid and enforceable any arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical * * * claim that is entered into prior to a patient receiving any care, diagnosis, or treatment shall include or be subject to the following conditions:

**{¶46}** * * *

**{¶47}** (H) The agreement shall not be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to agree.

**{¶48}** Furthermore, R.C. 2711.24 provides:

12

{¶49} To the extent it is in ten-point type and is executed in the following form, an arbitration agreement of the type stated in section 2711.23 of the Revised Code shall be presumed valid and enforceable in the absence of proof by a preponderance of the evidence that the execution of the agreement was induced by fraud, that the patient executed the agreement as a direct result of the willful or negligent disregard by the healthcare provider of the patient's right not to so execute, *or that the patient executing the agreement was not able to communicate effectively in spoken and written English* * * * .

{¶50} The patient, by signing this agreement, also acknowledges that the patient has been informed that:

{¶51} * * *

{¶52} (2) The agreement may not even be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to agree;

{¶53} * * *. (Emphasis added.)

{¶54} Even though Banks' mental condition prevented him from making a rational decision on whether to agree to the terms of the agreement, it was nevertheless presented to him in violation of 2711.23(H). Moreover, the evidence demonstrated Banks was unable to effectively communicate in spoken and written English.

{¶55} Presenting an arbitration agreement to a patient with the inability to understand its terms and import supports a finding of substantive unconscionability. R.C. 2711.23(H) and R.C. 2711.24 set forth a standard that dictates a patient may only be presented with an arbitration agreement when his condition would not interfere with him making a rational decision whether he should enter the agreement.

{¶56} Pearson submitted proof, by a preponderance of the evidence, that the decedent's MRDD and schizophrenia prevented the decedent from making a rational decision on whether to agree to the arbitration agreement. The trial court specifically found the arbitration agreement's otherwise commercially reasonable terms were

13

outweighed by factors supporting a finding of substantive unconscionability. The court stated:

> **{¶57}** [t]he most important of these is that there is nothing in the record to demonstrate that the Decedent had the capacity to contract. At the time of Decedent's admission, Manor Care was aware of the Decedent's diagnosis of mental retardation and paranoid schizophrenia. In support of her opposition to Manor Care's Motion to Stay, Plaintiff submits her Affidavit, where she outlined the Decedent's abilities and limitations as follows: (1) the Decedent was in special education classes throughout the entirety of his education; (2) The Decedent was not able to read books, magazines, letters or documents on his own; (3) the Decedent was unable to discuss his medical conditions because he did not comprehend them; and (4) the Decedent would have signed anything he was asked to sign.

**{¶58}** Manor Care did not provide any evidence regarding the cognition of Banks at admission. Manor Care presented the deposition of Darlene Stincic, who helped with Banks' admission to Manor Care. In her deposition, Ms Stincic outlined what she would normally do during the admissions process, but did not state anything specific relating to Banks' admission because she did not recall his admission. The lack of any evidence that Banks could make a rational decision on whether to enter the agreement is a significant factor weighing in favor of substantive unconscionability. The trial court did not err in ruling the agreement at issue was substantively unconscionable.

**{¶59}** Because we hold the trial court did not err in concluding the arbitration agreement was both procedurally and substantively unconscionable, appellants' first assignment of error is without merit.

**{¶60}** Appellants' second assignment of error provides:

**{¶61}** "The trial court erred in deciding the motion to stay without affording [appellants] the opportunity to conduct limited discovery as to Banks' capacity to

14

contract."

{¶62} Specifically, appellants assert that the "trial court erred in denying [their] motion to compel documents * * * regarding Banks' capacity."

{¶63} As a preliminary matter, Pearson contends that the substance of this particular judgment cannot be addressed in this appeal because the denial of a motion to compel compliance with a subpoena is not a final appealable order. *See, e.g., In re: Kelleher*, 7th Dist. Jefferson Nos. 08-JE-31, 08-JE-32, 08-JE-33, & 08-JE-34, 2009-Ohio-2960. If the trial court's judgment overruling the motions for leave and to compel was the sole decision appellants sought to appeal, this court would agree that the merits of that ruling would not be properly before us. R.C. 2711.02(C), however, provides that a judgment denying a motion to stay pending arbitration is a final order from which an immediate appeal can be taken. As part of their appeal from the denial of their motion to stay, appellants are entitled to contest the merits of any interlocutory order pertaining to the substance of the stay issue. Therefore, the merits of the trial court's ruling on the motions for leave and to compel can be reviewed in the context of this appeal.

{¶64} In the regulation of discovery, the trial court has discretionary power, and its decisions will not be overturned absent an abuse of that discretion. *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St.3d 578, 592 (1996); *State ex rel. Daggett v. Gessaman,* 34 Ohio St.2d 55, 57 (1973). An appellate court reviews a claimed error relating to a discovery matter under an abuse-of-discretion standard. *Lightbody v. Rust,* 137 Ohio App.3d 658 (8th Dist. 2000).

{¶65} The trial court denied appellants' motion to compel finding that all parties had been granted ample opportunity to brief the issues surrounding appellants' motion

15

to stay. Appellants were seeking all records and documents from the Gables relating to Banks. The trial court was deciding the issues surrounding Banks' admission into appellants' nursing facility. It was within the trial court's discretion to limit discovery pending its ruling on the motion to stay. As outlined above, the trial court was not deciding whether there was clear and convincing evidence that decedent lacked the capacity to contract but whether the procedure utilized by appellants during the admission of a patient diagnosed with MRDD and schizophrenia was unconscionable. Under the circumstances, the trial court did not abuse its discretion in denying the motion to compel.

{¶66} Appellants' second assignment of error is without merit.

{¶67} As a final point, Pearson's appellate brief contains a cross-assignment of error, in which she re-argues the other ten defenses she asserted in her response to the motion to stay. In essence, she requests that the trial court's denial of appellants' motion to stay be upheld on other grounds if the trial court's unconscionability analysis is reversed. Because, however, the trial court did not address the substance of her other ten arguments/defenses, they are not properly before this court for review in this appeal.

{¶68} For the foregoing reasons, appellants' assignments of error are without merit and the judgment of the Lake County Court of Common Pleas is affirmed.


COLLEEN MARY O'TOOLE, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

16

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶69} In concluding that Pearson was entitled to prevail on substantive unconscionability, the trial court relied solely upon this court's precedent in *Wascovich v. Personacare*, 190 Ohio App.3d 619, 2010-Ohio-4563 (11th Dist.). For the reasons that follow, *Wascovich* is flawed and should be overruled. Because Pearson failed to show that any of the arbitration agreement's terms are unreasonable, she did not establish substantive unconscionability. I would therefore reverse and remand for further proceedings. Accordingly, I dissent.

{¶70} In *Wascovich*, the decedent executed an arbitration agreement while being admitted to a nursing home. The decedent ultimately died due to complications arising after breaking his hip during a fall at the home. The personal representative brought an action seeking to hold the nursing home responsible for the death, and moved to have the arbitration agreement set aside as unconscionable. The *Wascovich* trial court rejected the representative's argument finding the representative failed to establish substantive unconscionability. *Id*. at ¶12-14.

{¶71} On appeal, this court held that the facts warranted a finding of substantive unconscionability. The basis of the substantive unconscionability analysis was as follows:

{¶72} "There are factors which weigh in favor of finding substantive unconscionability. First, the almost total lack of procedural protections weighs heavily against [the nursing home]. For example, there is nothing in the record to indicate that Wascovich appeared lucid and cognizant on the date he signed his admission documents. There are only assertions about what the admissions process normally

17

includes. Wascovich may have indicated no understanding regarding what he was signing. The burden is on [the nursing home] to produce *something* that reflects [it was] dealing with an individual who, at a minimum, had the capacity to contract. Lacking such information in the record, *any* substantive deficiency would be fatal.

{¶73} "The main problem with affirming the substantive aspect of the agreement, however, is that under the facts of the case, the normal factors favoring arbitration do not apply. This is because there is no economy or efficiency achieved. In fact, the contrary is true, as a party may be forced to participate in two proceedings, instead of one. Rather than achieve a cost savings, there would be a substantial increase in costs. The potential exists for an increase in the number of depositions and hearings, duplicative discovery, as well as expert testimony and expense in two forums. The addition of these factors outweighs the factors that weigh in favor of substantive unconscionability.

{¶74} "Most importantly, enforcement of the agreement in this case may result in inconsistent verdicts on the issue of liability – something that should be avoided in every case.

{¶75} "The parties and the issues are closely aligned, if not identical, to those in [*Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787]. Though *Peters* noted that arbitration is 'cost effective' and 'permits parties to achieve permanent resolution of their disputes in an expedient manner,' the exact opposite result occurs in this case if the arbitration agreement is enforced." (Emphasis sic.) *Id.* at ¶50-53.

{¶76} In our case, the trial court's substantive unconscionability analysis was

consistent with *Wascovich.* First, the trial court found that there was *no evidence demonstrating that Banks had the capacity to contract* when he signed the arbitration agreement. Second, the trial court found that, because the beneficiaries of Pearson's wrongful death claim cannot be required to submit to arbitration, the separate proceedings could result in inconsistent verdicts and increase the overall cost of the litigation.

**{¶77}** First, in relation to the "capacity to contract" discussion, lack of capacity is a separate defense to enforceability. By referencing lack of capacity in the context of its unconscionability discussion, the *Wascovich* court blurred two distinct concepts. When a party lacks contractual capacity, there can be no contract regardless of the terms as capacity pertains to formation. *Novak v.* Novak, 11th Dist. Lake Nos. 2013-L-047 and 2013-L-063, 2014-Ohio-10, ¶28. Resultantly, lack of capacity dispenses with any need to determine unconscionability. Substantive unconscionability, on the other hand, involves the fairness of the contractual terms. *Manley v. Personacare of Ohio*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343, ¶14.

**{¶78}** Next, the *Wascovich* court's conclusion is predicated on the observation that the nursing home did not present evidence that the decedent had the capacity to contract. However, the decedent's representative, as the party opposing enforcement of the arbitration agreement, has the burden to establish unconscionability. *Hayes v. The Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶20. The *Wascovich* court, without analysis, improperly shifted the burden of proof. Although a rebuttable presumption, capacity is presumed. *Dover v. Durkoske* 11th Dist. Lake No. 92-L-067, 1993 Ohio App. LEXIS 3338, *8-9 (Jun. 30, 1993). Accordingly, the nursing home had

19

no burden. In applying *Wascovich* in our case, the trial court therefore penalized appellants for not presenting evidence on an issue for which it had no burden.

{¶79} Further, *Wascovich's* conclusion that the benefits of arbitration would be defeated by multiple proceedings, while true, improperly considered the circumstances existing at the time of enforcement rather than those existing at the time of formation. In determining whether the terms of a contract are so one-sided as to be unconscionable, a court is to consider the circumstances that existed at the time the agreement was entered. *Jacco & Associates, Inc. v. HVAC, Inc.*, 5th Dist. Tuscarawas No. 2013 AP 03 0016, 2014-Ohio-128, ¶58; *Neubrander v. Dean Witter Reynolds, Inc.*, 81 Ohio App.3d 308, 312-313 (9th Dist. 1992). *See also, Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 246 P.3d 961 (2010); *Strand v. U.S. Bank Nat. Assn. ND*, 2005 ND 68, 693 N.W.2d 918 (2005).

{¶80} Furthermore, even if events that developed after execution could be considered, the terms of an arbitration agreement, executed by the decedent, are not binding upon his relatives for purposes of their wrongful death claims. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, ¶19. When a nursing home resident signs an arbitration agreement upon his admission to the facility and then dies of an injury sustained during his stay, the arbitration agreement only applies to the survivorship claim. The wrongful death claim proceeds independently. Under *Wascovich*, an arbitration agreement will always be declared substantively unconscionable when the ensuing legal action involves both survivorship and wrongful death claims. Clearly, this would invalidate many arbitration agreements regardless of fairness, thereby divesting the parties of their constitutional right to contract. *See* Article

20

II, Section 28, Ohio Constitution; *Hayes*, 2009-Ohio-2054, at ¶29. Moreover, when upholding an arbitration agreement, the parties to the wrongful death case are afforded the opportunity to exercise their constitutional right to a jury trial. *See* Article I, Section 5, Ohio Constitution. Those rights are entitled to greater weight than any adverse effect the enforcement of the arbitration agreement might have upon the efficiency of the litigation.

{¶81} Considered as a whole, *Wascovich* is fatally flawed because it does not focus on the fairness of the individual terms in the arbitration agreement. The Tenth Appellate District expressly declined to follow *Wascovich* because its substantive unconscionability analysis is inconsistent with the approach employed by the Supreme Court and other appellate districts. *Harrison v. Winchester Place Nursing & Rehab. Center*, 10th Dist. Franklin No. 12AP-327, 2013-Ohio-3163, ¶37-47.

{¶82} In relying on *Wascovich* as part of its substantive unconscionability discussion, the majority references the lack of evidence on capacity, but does not demonstrate that the terms are unfair. Substantive unconscionability, however, is term dependent.

{¶83} In affirming, the majority also relies upon R.C. 2711.23(H) and 2711.24; neither of which were considered by the trial count. According to the majority, the two statutes provide guidance as to whether a contract term is reasonable. However, neither statute addresses the reasonableness of terms.

{¶84} R.C. 2711.24(H) states that an arbitration agreement should not be given to a patient for approval when his condition will prevent him from making a rational decision. However, the trial court made no finding on this issue. Thus, if this is a basis

21

for striking the arbitration agreement, remand is necessary.

{¶85} R.C. 2711.24 states that an arbitration agreement is presumed valid in the absence of proof that the patient is unable to communicate effectively in spoken *or* written English.

{¶86} The trial court never addressed this provision, and thus did not make sufficient findings to establish that it applies. Specifically, there was no finding that Banks was unable to communicate effectively in spoken English. Thus, the presumption prevails. Moreover, even if the trial court had made sufficient findings removing the presumption of validity, that, in and of itself, does not lead to a conclusion that the arbitration agreement is therefore invalid.

{¶87} With that said, I address other issues Pearson raises challenging the general reasonableness of the arbitration agreement. "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Hayes*, 2009-Ohio-2054, at ¶33.

{¶88} Pearson argues that the terms of the arbitration agreement were unreasonable because they did not afford Banks a fair opportunity to retract his initial assent to the agreement. However, the agreement allows a new resident to cancel his initial assent by sending written notice to the facility administrator within thirty days of admission. Thirty days is a reasonable amount of time to rescind.

{¶89} Pearson also asserts that the terms are not enforceable because the arbitration agreement is within the body of the admissions agreement that was over

22

twenty pages in length. The record does not support this contention. Although the arbitration agreement is attached as an addendum to the admissions agreement, the arbitration terms are not set forth as merely another provision of the admissions agreement. The arbitration agreement is a stand-alone two-page document entitled "Voluntary Arbitration Agreement" at the top. Thus, this is not a situation in which a new resident signed the admissions agreement without realizing he was also agreeing to arbitration.

**{¶90}** Pearson also maintains that the arbitration terms are unreasonable because they do not fully explain the benefits a new resident forfeits by waiving his right to a jury trial. However, in *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶54, the Ohio Supreme Court concluded that the failure to inform a party of the jury trial waiver does not render an arbitration clause substantively unconscionable. Moreover, the arbitration agreement states twice in bold print that the new resident is waiving his right to a jury trial. In light of *Taylor Building Corp.*, no further explanation is required.

**{¶91}** Under her final challenge, Pearson argues that the arbitration agreement is unreasonable because it contains a provision under which each side is required to pay its own attorney fees and costs in preparing for the arbitration hearing. Such a provision, however, is not so one-sided or oppressive as to be commercially unreasonable. *Hayes*, 2009-Ohio-2054, at ¶35.

**{¶92}** The trial court's judgment does not provide a valid basis to strike the arbitration agreement. The evidence is such that there is a basis to reverse and remand for the trial court to determine if the arbitration agreement is enforceable on

23

formational grounds.  I would remand to the trial court to make that determination.