[Cite as *Loomis v. O'Neill Healthcare - Middleburg Hts.*, 2026-Ohio-2079.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JEFFREY LOOMIS, INDIVIDUALLY : 
AND AS ADMINISTRATOR OF THE 
ESTATE OF TERRI LOOMIS, :

    Plaintiff-Appellee, :

                                     No. 115372

    v. :

O'NEILL HEALTHCARE - :
MIDDLEBURG HEIGHTS, ET AL.,

    Defendants-Appellants. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 4, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-109993

---

### *Appearances:*

Obral, Silk & Pal, LLC, Mark J. Obral, and Jacob DeBaltzo, *for appellee.*

Marshall Dennehey, P.C., and Leslie M. Jenny, *for appellants.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendants-appellants O'Neill Healthcare — Middleburg Heights;

Middleburg Heights Nursing Home, LLC; O'Neill Management, LLC; O'Neill

Healthcare, LLC; John T. O'Neill; Fredericka Bloxon, STNA; Hanna Corwin, LNHA; Jamila Pace, LPN; Christine Lange, RN; and Laura Alberino, LPN (collectively "appellants"), appeal the trial court's decision denying their motion to stay and enforce arbitration agreement. The trial court found that the arbitration agreement lacked an authentic signature and further found it procedurally and substantively unconscionable and thus unenforceable. For the reasons that follow, this court affirms the trial court's decision denying appellants' motion to stay and compel arbitration.

## I. Procedural and Factual Background

{¶ 2} Terri Loomis ("Terri") suffered a stroke in 2013 and again in 2016. In 2018, she was admitted into a long-term health-care facility in Middleburg Heights. Testimony revealed that during her residency she would often be hospitalized but then return to the care facility. On March 2, 2021, after being hospitalized and upon her return to the facility, Terri was presented with two documents — a Facility Admission Agreement and a separate Arbitration Agreement. According to statements made at a hearing, the care facility officially "transferred" to O'Neill Healthcare-Middleburg Heights during this time. Both agreements were form documents and a facility staff member filled in the blank spaces, including Terri's printed name and date of execution. Appellants alleged that Terri signed the agreements as the "resident," and a facility staff member signed and dated both documents on behalf of the facility. Despite a blank space for a witness's signature, no one witnessed Terri sign the arbitration agreement.

**{¶ 3}** On January 17, 2024, Terri fell while living at O'Neill Healthcare, suffering fractures to her leg and arm. She passed away a week later.

**{¶ 4}** In February 2025, Terri's husband, plaintiff-appellee Jeffrey Loomis ("Loomis"), individually and as Administrator of the Estate of Terri Loomis, filed an amended complaint against appellants and Shelley Burke, M.D., bringing claims for (1) wrongful death, (2) violation of Residents' Rights pursuant to R.C. 3721.13, (3) breach of contract, (4) reckless misconduct, (5) negligent hiring, supervision, and retention, and (6) conscious pain and suffering — brought as a survivorship action under R.C. 2305.21. Appellants moved to stay the proceedings and compel arbitration. Loomis opposed the motion, contending that the arbitration agreement (hereinafter "the agreement") was unconscionable and lacked a valid signature.

**{¶ 5}** Following an evidentiary hearing on appellants' motion, the trial court determined that the agreement lacked an authentic signature, thus rendering the agreement unenforceable. The court further found that (1) the agreement was procedurally unconscionable based on the evidence submitted that Terri lacked the ability to comprehend the agreement; (2) the agreement was substantively unconscionable because the agreement did not comply with relevant statutory law; and (3) the agreement's language did not create a binding agreement to arbitrate. Accordingly, the trial court denied appellants' motion to stay and compel arbitration.

## II. The Appeal

{¶ 6} Appellants now appeal, contending in their sole assignment of error that the trial court erred and abused its discretion by not staying the entire matter pending complete arbitration of all arbitrable claims as required by R.C. Ch. 2711. Specifically, appellants assert the following two issues:

(1) Was the trial court required to stay the entire matter because the arbitration agreement was binding?

(2) Was the trial court required to stay the entire matter pending completion of arbitration of all claims arbitrable because the arbitration agreement is conscionable and enforceable?

The arguments raised in support of these issues challenge the trial court's finding that the agreement lacked an authentic signature and that the agreement was unconscionable.

### A. Standard of Review

{¶ 7} The standard of appellate review in determining the enforceability of an arbitration provision is de novo; however, any factual findings by the trial court must be accorded deference. *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 2. Whether a contractual provision is unconscionable is fact-dependent and requires an analysis of the circumstances of the particular case before the court. *Bayes v. Merle's Metro Builders/Blvd. Constr., LLC.*, 2007-Ohio-7125, ¶ 6 (11th Dist.). However, the issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review. *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212, ¶ 7-8 (8th Dist.), citing *Shumaker v. Saks Inc.*, 2005-Ohio-4391, ¶ 6 (8th Dist.), and

*Taylor Bldg.* at ¶ 14. Under a de novo standard of review, we give no deference to the trial court's decision. *Id.*

### B. Does the Agreement Contain an Authentic Signature?

**{¶ 8}** The Facility Admissions Agreement and the agreement were both signed on March 2, 2021, and contain an illegible signature. The trial court found Terri's signature on the agreement "questionable" because of the lack of evidence of similar signatures and that no other evidence was presented to confirm the validity of Terri's signature. Based on our review of the record, we disagree and find that the evidence supported that Terri executed both documents on March 2, 2021.

**{¶ 9}** First, it is undisputed that O'Neill Healthcare was paid for services rendered to Terri during her residency at the facility. Payment was authorized under the admissions document, signed at the time the agreement was signed. No argument has been raised challenging the validity of this document. Accordingly, if one signature is unrefuted, we can assume the disputed signature as authentic.

**{¶ 10}** Loomis, nevertheless, testified that Terri's signatures on the March 2, 2021 documents did not match her signatures on her driver's license or her social security card. He admitted, however, that those were signed years prior to Terri suffering both strokes. He further admitted that after suffering both strokes, her signatures changed, agreeing that it was "for the worst" and less legible. Loomis stated that she could not play any games because her hands "shook so badly" that Terri would not be able to "hold a checker."

{¶ 11} Because Loomis's testimony revealed that Terri's hands "shook so badly" and her signature changed "for the worst," the evidence suggests that the illegible signatures were Terri's. Accordingly, we find that Terri signed both documents, including the agreement as alleged and the trial court erred in finding otherwise. This finding, however, does not end our discussion.

### C. Is the Agreement Unconscionable?

{¶ 12} The purpose of an arbitration agreement is to provide its parties an expeditious and economical way of resolving any dispute that could arise from their relationship. *See Hayes v. The Oakridge Home*, 2009-Ohio-2054, ¶ 15. To the extent that arbitration is an alternative means of determining legal disputes, agreements to arbitrate further serve the purpose of decreasing the number of pending cases on court dockets. *Id.* Given the importance of the two interrelated purposes, the Ohio Supreme Court has recognized a presumption in favor of arbitration whenever the dispute between the parties is covered under the terms of the arbitration agreement. *Taylor Bldg.*, 2008-Ohio-938, at ¶ 26.

{¶ 13} R.C. 2711.01(A) states that arbitration provisions are generally considered valid and enforceable. R.C. 2711.02(B) then states how a party may enforce an arbitration agreement. That statute grants a trial court the authority to stay any pending action based upon an issue that is referable to arbitration pursuant to a written arbitration agreement between the parties.

{¶ 14} Notwithstanding the existence of case law and statutory law encouraging the use of arbitration, an agreement to arbitrate can still be

invalidated on any "grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One recognized reason for invalidating an arbitration agreement is unconscionability. *Vanyo v. Clear Channel Worldwide*, 2004-Ohio-1793, ¶ 17 (8th Dist.).

{¶ 15} Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. *Id.*, citing *Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 834 (2d Dist. 1993). Unconscionability involves a two-prong determination — procedural and substantive unconscionability.

{¶ 16} The burden of proving both prongs of unconscionability is upon the party asserting the defense. *Hayes*, 2009-Ohio-2054, at ¶ 20. To carry this burden, the party is required to present a "quantum" of evidence demonstrating both the substantive and procedural prongs of the standard. *Id.*, quoting *Collins* at 834. Given that both the substantive and procedural prongs must be satisfied to establish unconscionability, the failure to prove one of the prongs alleviates the necessity to review the remaining prong. *Reno v. Bethel Village Condominium Assoc. Inc.*, 2008-Ohio-4462, ¶ 13 (10th Dist.).

### 1. Procedural Unconscionability

{¶ 17} Procedural unconscionability exists when it is determined that there was no voluntary meeting of the minds by the parties to the contract under circumstances particular to that contract. It considers "'factors bearing on the

relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible.'" *Vanyo*, 2004-Ohio-1793, at ¶ 18 (8th Dist.), quoting *Collins* at 834.

{¶ 18} In *Hayes*, the Ohio Supreme Court set forth additional factors that may contribute to a finding of procedural unconscionability. Those factors include: "'"[K]nowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement, or similar factors."'" *Hayes*, 2009-Ohio-2054, at ¶ 24 quoting *Taylor Bldg.*, 2008-Ohio-938, at ¶ 44, quoting Restatement of the Law 2d, Contracts, § 208, Comment d (1981).

{¶ 19} In this case, the trial court determined that based on the evidence submitted, the agreement was procedurally unconscionable because Terri lacked the ability to comprehend the agreement. It found that "at the time of the alleged signing," Terri "was not capable of providing informed consent due to her medical condition." The court reasoned that based on the

> exhibits and the testimony of . . . Loomis, [appellants] knew or should have known that Terri . . . suffered medical complications which included but were not limited to two strokes prior to the alleged signing, which severely limited her ability to communicate, and which would have hindered her ability to physically read or comprehend the alleged agreement.

{¶ 20} Appellants contend that the trial court's finding that the agreement was procedurally unconscionable was incorrect because the evidence submitted revealed that Terri had the mental capacity to make informed decisions. Appellants focus on Terri's medical records that "showed her alert and oriented and able to make an informed decision." Additionally, appellants direct this court to the fact that Terri had a power of attorney that was not presented to them, which would notify them of Terri's inability to make decisions.

{¶ 21} Based on our review, appellants have not demonstrated error in the trial court's finding of procedural unconscionability. Rather, we find that the trial court possessed sufficient factual evidence to make the finding.

{¶ 22} The testimony and evidence presented at the hearing established that after Terri suffered strokes in 2013 and 2016, she had severe physical and cognitive impairments. According to Loomis's testimony, in March 2021, Terri's ability to communicate, express herself, and understand communication was severely limited. In addition to communication limitations, the evidence supported that Terri suffered physical limitations that would have made it impossible for her to read and comprehend the arbitration agreement. Loomis testified that Terri was blind in one eye and had limited vision in her other eye, requiring large printed materials. He stated that in 2021, Terri could only use small sentences and could not have in-depth conversations. Loomis stated unequivocally that based on Terri's physical and mental limitations, she would not have been able to read or comprehend the agreement.

{¶ 23} When presented with the agreement, Loomis stated that until his attorney showed him the agreement, he had never seen it before nor was he aware of the agreement. Despite being her agent under a healthcare power of attorney, he was not present when Terri signed the document. It was established, however, that no healthcare or general power of attorney was presented to the facility notifying them that Terri could not make decisions for herself.

{¶ 24} Appellants did not present any witness testimony or affidavit contradicting Loomis's testimony about whether Terri read or understood the agreement, or alternatively, because of her physical limitations, that someone read and explained the agreement to her. Instead, appellants presented some of Terri's medical records from January and February 2021.[1] Appellants focus on the records stating that Terri was "alert and oriented." A closer look, however, characterizes Terri as having a "medically complex" history with both physical and mental infirmities.

{¶ 25} Under the circumstances, we conclude the trial court did not err in finding the agreement was procedurally unconscionable. The evidence established that appellants should have known that Terri was unable to reasonably protect her interests by "reason of physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement."

---

[1] Terri's 2023 medical records relied on by appellants are irrelevant regarding whether in March 2021 Terri had the capacity to consent and understand the agreement.

## 2. Substantive Unconscionability

{¶ 26} With respect to substantive unconscionability, the trial court found that the agreement did not abide by the requirements of R.C. 2711.23. Additionally, the court concluded that appellants, as the drafting party, used the word "desire," which did not explicitly create a binding agreement to arbitrate.

{¶ 27} The Supreme Court of Ohio has observed that it has not adopted a bright-line set of factors when determining substantive unconscionability, because "[t]he factors to be considered vary with the content of the agreement at issue." *Hayes*, 2009-Ohio-2054, at ¶ 33. "Substantive unconscionability goes to the specific terms of the contract. When considering substantive unconscionability, the court should observe whether the terms of the contract are commercially reasonable." *Id*. at ¶ 26.

{¶ 28} R.C. 2711.23 outlines certain terms to which an arbitration agreement is subject for purposes of determining its validity and enforceability. In effect, that statute provides some guidance for determining whether the agreement is commercially reasonable. R.C. 2711.23 provides, in relevant part:

> To be valid and enforceable any arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical . . . claim that is entered into prior to a patient receiving any care, diagnosis, or treatment shall include or be subject to the following conditions:
>
> . . .
>
> (B) The agreement shall provide that the patient, or the patient's spouse, or the personal representative of the patient's estate in the event of the patient's death or incapacity, shall have a right to withdraw the patient's consent to arbitrate the patient's claim by notifying the

healthcare provider or hospital in writing within thirty days after the patient's signing of the agreement. Nothing in this division shall be construed to mean that the spouse of a competent patient can withdraw over the objection of the patient the consent of the patient to arbitrate[.]

. . .

(H) The agreement shall not be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to agree.

{¶ 29} Furthermore, R.C. 2711.24 provides:

To the extent it is in ten-point type and is executed in the following form, an arbitration agreement of the type stated in section 2711.23 of the Revised Code shall be presumed valid and enforceable in the absence of proof by a preponderance of the evidence that the execution of the agreement was induced by fraud, that the patient executed the agreement as a direct result of the willful or negligent disregard by the healthcare provider of the patient's right not to so execute, or that the patient executing the agreement was not able to communicate effectively in spoken and written English[.]

. . .

The patient, by signing this agreement, also acknowledges that the patient has been informed that:

. . .

(2) The agreement may not even be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to agree.

. . .

(5) The patient must be furnished with two copies of this agreement.

{¶ 30} Additionally, R.C. 2711.24 affords the patient, patient's spouse, or representative, the right to cancel the agreement by notifying the healthcare provider in writing within 30 days after the agreement was signed. The right to

cancel can "merely" be accomplished by writing "cancelled" on the face of one of the copies provided to the patient and mailed to the provider. *Id.*

{¶ 31} In this case, the agreement only afforded Terri *herself* the opportunity to terminate or revoke the agreement and only afforded her 21 days to do so. Further, the agreement did not conspicuously provide a separate section about cancellation. Although the agreement provided information about terminating the agreement, it did so under the heading, "Amendment" and then again in the last sentence of the final paragraph. In that paragraph, it stated that "the resident" was given the "opportunity to ask questions" and afforded her the ability, if she so chooses "within 21 days" to discuss the agreement with a representative, including an attorney, if she "feels that is advisable and in [her] interests." The agreement is contrary to the 30-day cancellation provision in R.C. 2711.23 and 2711.24, and nowhere in the agreement does it afford Terri's spouse or representative the ability to cancel the agreement on her behalf. Finally, no evidence was presented that appellants provided Terri with two copies of the agreement as required under R.C. 2711.24.

{¶ 32} In addition to the substantive deficiencies in the agreement, the testimony and evidence established that Terri's physical conditions prevented her from making a rational decision on whether to agree to the terms of the agreement; thus the facility presented it to her in violation of R.C. 2711.23(H) and 2711.24. It was further demonstrated that Terri was unable to effectively communicate about the contents of the agreement or even understand the provisions of the agreement.

As previously discussed, the agreement was a form document and the blank spaces, except the patient's signature line, were completed by a facility staff member.

{¶ 33} "Presenting an arbitration agreement to a patient with the inability to understand its terms and import supports a finding of substantive unconscionability." *Pearson v. ManorCare Health Servs.*, 2015-Ohio-5460, ¶ 55 (11th Dist.). "R.C. 2711.23(H) and R.C. 2711.24 set forth a standard that dictates a patient may only be presented with an arbitration agreement when [her] condition would not interfere with [her] making a rational decision whether [she] should enter the agreement." *Id.* In this case, absent any evidence that the agreement was read and explained to Terri, we find the agreement substantively unconscionable.

## III. Conclusion

{¶ 34} Based on the foregoing, we find that the trial court did not err in concluding that the arbitration agreement was both procedurally and substantively unconscionable. Appellants' assignment of error is without merit and thus overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellants, O'Neill Healthcare — Middleburg Heights; Middleburg Heights Nursing Home, LLC; O'Neill Management, LLC; O'Neill Healthcare, LLC; John T. O'Neill; Fredericka Bloxon, STNA; Hanna Corwin, LNHA; Jamila Pace, LPN; Christine Lange, RN; and Laura Alberino, LPN, costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MICHAEL JOHN RYAN, J., CONCURS;
EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

EILEEN T. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶ 36} I concur in the judgment of the majority affirming the decision of the trial court. However, I write separately because I do not believe a valid agreement existed in this case and consequently, there was no need for an unconscionability analysis.

{¶ 37} "Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties *with the legal capacity to act*." (Emphasis added.) *Widok v. Estate of Wolf*, 2020-Ohio-5178, ¶ 52 (8th Dist.), citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16. Whether a party possesses the mental capacity to form a contract is a threshold question that must be resolved before a court can determine whether an arbitration agreement is enforceable. *Handy v. Patriot Mgt. & Invests. Co.*, 2026-Ohio-1627, ¶ 55 (4th Dist.), citing *Melaas v. Diamond Resorts U.S. Collection Dev., L.L.C.*, 953 N.W.2d 623 (N.D. 2021).

{¶ 38} "'If the contract containing the arbitration agreement was never formed and therefore does not exist, then the parties never agreed to arbitrate.'" *Handy* at ¶ 55, quoting *Melaas* at 633. Once the court concludes that the parties entered into an agreement, then the court can determine if a valid arbitration clause exists and, if so, the extent of the arbitration clause. *Trinity Health Sys. v. MDX Corp.*, 2009-Ohio-417, ¶ 31 (7th Dist.), citing *McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 51-52 (12th Dist. 2001). *See also Smith v. Rezutek*, 2024-Ohio-5599, ¶ 7 (8th Dist.) ("[A]n analysis of whether a dispute falls within the scope of an arbitration agreement should logically follow the initial determination whether the parties ever entered into an agreement in the first place."), citing *Mason v. Mason,* 2017-Ohio-5787, ¶ 22 (5th Dist.), citing *Trinity Health Sys.*

{¶ 39} "The test for mental capacity to enter into a contract is whether the person understood the nature of the transaction and the effects of her or his own actions and is similar to the test used to determine testamentary capacity." *Webb v. Betty S. Anderson Children Trust*, 2020-Ohio-4975, ¶ 34 (1st Dist.), citing *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 658 (8th Dist. 1993). A party seeking to void a contract because of lack of capacity has the burden of proof by clear and convincing evidence. *Barttile Recovery Solutions L.L.C. v. Cleavenger*, 2025-Ohio-4589, ¶ 13 (8th Dist.), citing *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 6.; *DiPietro v. DiPietro*, 10 Ohio App.3d 44, 46 (10th Dist. 1983). Clear and convincing evidence is the measure or degree of proof that "'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Snider-Cannata*

*Interests, L.L.C. v. Ruper*, 2010-Ohio-1927, ¶ 31 (8th Dist.) quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 40} In the instant matter, Loomis argued in his brief in opposition to the motion to stay that Terri lacked the capacity to sign the agreement and presented his own testimony in support of this assertion at the hearing on the motion.

LOOMIS'S COUNSEL: Why was your wife at the defendant's facility in 2021?

LOOMIS: Dating back in 2015 she ended up having a series of small strokes.

LOOMIS'S COUNSEL: With the stroke, what were the ramifications?

LOOMIS: Inability to get out of bed, simple daily acts, taking showers, stuff like that, and the ability to communicate.

LOOMIS'S COUNSEL: Her inability to communicate, correct?

THE COURT: Was that just spoken?

LOOMIS: No. That was all.

THE COURT: Could she write?

LOOMIS: No.

THE COURT: Okay.

LOOMIS'S COUNSEL: I'd like to take you back to 2021. Would you please tell the Court how your wife would communicate back then?

LOOMIS: Back then it was a series of small sentences and repeating, like I love you, goodbye, hello. Short sentences.

LOOMIS'S COUNSEL: Goodbye, hello?

LOOMIS: Yeah. And I love you. And that's pretty much about it.

. . .

LOOMIS'S COUNSEL: Would she be able to communicate her thoughts about any type of arbitration agreement?

LOOMIS: No, she would not have.

LOOMIS'S COUNSEL: Back in 2021, to your knowledge — and you saw her on a regular basis, sir. That's correct?

LOOMIS: Yes.

LOOMIS'S COUNSEL: What was your wife able to understand?

LOOMIS: That's hard to figure out. I think what she had for lunch or dinner.

LOOMIS'S COUNSEL: I'm sorry. I didn't hear you.

LOOMIS: Maybe she was able to, like what she ate for lunch or dinner.

LOOMIS'S COUNSEL: Would anybody be able to have any in-depth conversations with her about anything?

LOOMIS: No. That would not have been at that time possible.

(Tr. 23-25.)

{¶ 41} Loomis testified that he and Terri watched television together but that she did not comment on the plot, laugh at jokes, or indicate that she understood what she was watching.

{¶ 42} Loomis was shown the arbitration agreement and asked if Terri would have been able to read it. He said no, stating that "she lost her sight in her left eye and in her right eye she lost most of it. She would be able to read large print books but never something small like this." (Tr. 26.) Loomis testified that Terri would not have been able to discuss the agreement with anyone from O'Neill – that

it was "totally impossible," and she could not have told anyone. (Tr. 46.) He denied that she would have been able to "communicate with anybody based on her limited vocabulary what she felt about that arbitration agreement." (Tr. 26.)

{¶ 43} O'Neill argued that Terri had previously executed a durable healthcare power of attorney that would go into effect if her doctor determined that she had lost the capacity to make informed healthcare decisions. O'Neill asserted that Terri had capacity because the durable healthcare power of attorney had not been invoked. In addition, it presented certain medical records indicating that Terri had been alert and had the ability to make independent decisions about her own welfare.

{¶ 44} In denying the motion to stay, the trial court determined, inter alia, that Terri "was not capable of providing informed consent" to sign the arbitration agreement and that her "medical complications . . . severely impaired her ability to communicate, and . . . hindered her ability to physically read or comprehend the alleged agreement." The trial court concluded that Loomis had therefore demonstrated procedural unconscionability. However, the trial court's findings actually pertained to Terri's lack of capacity and resulting inability to enter into the arbitration agreement. There was therefore no need to analyze the issue of unconscionability because this presumes that a valid agreement exists. *See Pearson v. ManorCare Health Servs.*, 2015-Ohio-5460, ¶ 77 (11th Dist.) (Wright, J., dissenting) (noting that a "lack of capacity dispenses with any need to determine unconscionability).

{¶ 45} There is no shortage of cases analyzing arbitration agreements, particularly involving nursing homes. And there are numerous cases reviewing unconscionability in these agreements. However, the analysis of the agreements often conflates a lack of capacity with unconscionability and fails to address whether the basic tenets of contract formation are present. Even the parties themselves often blur these two distinct concepts and bypass the very basic question of whether the signing party had the capacity to enter into an arbitration agreement.

{¶ 46} Arbitration agreements such as the one at issue here are often signed by elderly patients during extremely stressful times in their lives. It is not difficult to imagine that capacity issues could arise in these circumstances. Consequently, if a nursing-home resident raises the issue of capacity, it is paramount that courts consider these arguments to first determine if a valid contract even exists rather than only examining capacity issues in the context of unconscionability.

{¶ 47} Based on the foregoing, I would have found that Terri lacked capacity and concluded that a valid arbitration agreement did not exist. In my view, the unconscionability analysis was unwarranted because there was no contract between the parties. Accordingly, I concur in judgment only.